GENERAL MOTORS CORPORATION
v DEPARTMENT OF TREASURY

Docket No. 291947. Submitted August 3, 2010, at Lansing. Decided October 28, 2010, at 9:00 a.m.

General Motors Corporation (GM) filed suit in the Court of Claims against the Department of Treasury, seeking refunds of taxes it paid under the Use Tax Act, MCL 205.91 *et seq.*, for its employees' use of GM-manufactured "program vehicles" for tax periods from October 1, 1996, to August 31, 2007. GM argued that the use of program vehicles was exempt from taxation because the vehicles were purchased for resale or demonstration purposes under MCL 205.94(1)(c), as interpreted by *Betten Auto Ctr, Inc v Dep't of Treasury*, 272 Mich App 14 (2006), aff'd in part 478 Mich 864 (2007). GM also argued that 2007 PA 103, which amended the Use Tax Act to obviate the holding of *Betten*, was improperly enacted special legislation and that, if applied retroactively as provided in the amendatory act itself, the amendment would violate GM's right to due process. Finally, GM contended that its employees' use of program vehicles was exempt from taxation under the act, even as amended. The court, Rosemarie E. Aquilina, J., agreed and granted GM partial summary disposition, concluding that the retroactive effect of 2007 PA 103 violated GM's right to due process because an 11-year retroactivity period was contrary to the holding of *United States v Carlton*, 512 US 26 (1994), which permitted only a modest period of retroactivity for economic legislation. The court also held that 2007 PA 103 violated the prohibition of special legislation in Const 1963, art 4, § 29, because it was enacted for the sole purpose of preventing GM from receiving use tax refunds. Finally, the court ruled that GM's program vehicles were exempt from use tax under MCL 205.94(1)(c), as amended by 2007 PA 103, because GM manufactured cars for resale and demonstration purposes and was not licensed as a new vehicle dealer and, thus, was not limited to the exemption for only 25 vehicles set forth in MCL 205.94(l)(c)(*iii*). The department appealed, and GM cross-appealed.

The Court of Appeals *held*:

1. The trial court erred by finding that the retroactive application of the legislation violated GM's due process rights. The Use Tax Act provides exemptions from use taxation for certain property. Before the enactment of 2007 PA 103, property purchased for resale or demonstration purposes was exempt under MCL 205.94(1)(c). Under *Betten*, even though automobiles in a dealer's inventory were used before being resold, because they had been purchased for resale and were eventually resold, they were exempt from use taxation under that exemption. 2007 PA 103 amended the Use Tax Act to make taxable any use of property purchased for resale other than as passive inventory and changed the definitions of some terms in the act. Those amendments were retroactively made effective beginning September 30, 2002 and for all tax years that were open under the statute of limitations provided in MCL 205.27a. Under *Carlton*, retroactive legislation to correct an unanticipated revenue loss caused by poor drafting of a law or by a judicial decision is rationally related to a legitimate legislative purpose, though the period of retroactivity must be limited by due process considerations to a modest time frame. 2007 PA 103 did not exceed the modest retroactive period allowed because it did not impose a wholly new tax but confirmed a tax assessed and paid for years. GM did not act in reliance on an expectation that its use of program vehicles would be exempt from use taxation or have a vested right to the continuation of a tax statute, and the Legislature responded promptly to *Betten* when it amended the statute. Finally, GM voluntarily waived application of the statute of limitations.

2. The trial court erred by concluding that 2007 PA 103 violated Const 1963, art 4, § 29, which prohibits enactment of a special act when a general act can be made applicable. Legislation may be general in the constitutional sense even if in its application it affects only one person or place as long as the law is general and uniform in its operation on all persons in like circumstances. Nothing in the language of 2007 PA 103 limited its application to GM only, either prospectively or retrospectively. The evidence showed that the proposed legislation was enacted in compliance with all the procedural requirements of Const 1963, art 4, §§ 22, 26, and 33.

3. Although the language of MCL 205.94(1)(c) as amended did not limit application of the exemption for property purchased for demonstration purposes to new car dealers, GM did not qualify for either that exemption or the exemption for property purchased for resale because it manufactured, rather than purchased, its program vehicles. For the same reason, it did not qualify for the

exemption that existed before the statute was amended. GM's use of program vehicles was for its own research and promotion; it did not demonstrate vehicles for the purpose of inducing actual retail sales to customers.

4. Retroactive application of 2007 PA 103 did not violate the Due Process Clause or the Taking Clause, US Const, Am V. A government's exercise of the taxing power does not constitute a Fifth Amendment taking unless the taxation is so arbitrary that it is a confiscation of property. 2007 PA 103 furthered a legitimate state interest, and its retroactive application was rationally related to that legitimate state interest.

5. The title of 2007 PA 103 satisfied the Title-Object Clause of Const 1963, art 4, § 24. No law may embrace more than one object, which must be expressed in the title of the act. The object of a law is its general purpose or aim. Every detail of an amendatory act need not be specified in its title as long as the title comprehensively declares the one main general purpose of the act. 2007 PA 103 identified its purpose as amending specific sections of the Use Tax Act, which is what it did. Nothing more was constitutionally required.

Reversed and remanded.

1. STATUTES — AMENDMENT — RETROACTIVITY.

The retroactive application of 2007 PA 103, which amended provisions of the Use Tax Act, MCL 205.91 *et seq.*, to clarify the application of that act to exempt property converted to a taxable use and to remedy any misinterpretation that resulted from the holding in *Betten Auto Ctr v Dep't of Treasury*, 272 Mich App 14 (2006), aff'd in part 478 Mich 864 (2007), does not violate any due process rights (Const 1963, art 1, § 17).

2. STATUTES — SPECIAL LEGISLATION.

Const 1963, art 4, § 29 prohibits the enactment of special legislation if a general act can be made applicable; the fact that a law only applies to a limited number, however, does not make it special rather than general legislation; legislation may be general in the constitutional sense even if in its application it affects only one person or place as long as the law is general and uniform in its operation on all persons in like circumstances.

3. TAXATION — USE TAX — EXEMPTIONS — AUTOMOBILES — PURCHASED FOR RESALE OR DEMONSTRATION PURPOSES.

The exemptions from the Use Tax Act for property purchased for demonstration purposes and for property purchased for resale

require that the property be purchased, not merely manufactured, to qualify for the exemptions; a purchase requires a transfer of property for consideration from one person to another; for purposes of the exemptions, a purchase does not include a manufacturer's obtaining property that it manufactures from a subsidiary of the manufacturer (MCL 205.94[1][c][*iii*]).

4. STATUTES — TITLE-OBJECT CLAUSE — AMENDATORY ACTS.

No Michigan law may embrace more than one object, which must be expressed in the title of the act; the object of a law is its general purpose or aim; every detail of an act need not be specified in its title as long as the title comprehensively declares the one main general purpose of the act and provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose; the general object of an amendatory act is to amend provisions of a statute (Const 1963, art 4, § 24).

*Honigman Miller Schwartz and Cohn LLP* (by *Alan M. Valade, June Summers Haas*, and *John D. Pirich*) and *Sutherland Asbill & Brennan LLP* (by *Kent L. Jones, Daniel H. Schlueter*, and *Jeffrey N. Starkey*) for plaintiff.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Bruce C. Johnson, Drew M. Taylor*, and *Heidi L. Johnson-Mehney*, Assistant Attorneys General, for defendant.

Before: M. J. KELLY, P.J., and MARKEY and OWENS, JJ.

PER CURIAM. Defendant, the Department of Treasury (Treasury), appeals by leave the order of the Court of Claims granting the motion of plaintiff General Motors Corporation (GM) for partial summary disposition with respect to liability on GM's two claims for refunds of taxes it paid on its employees' use of GM-manufactured "program vehicles" for tax periods from October 1, 1996, to August 31, 2007. GM asserts the use of program vehicles was exempt from taxation because the vehicles were "purchased for resale [or] demonstration

purposes" under MCL 205.94(1)(c), as interpreted by *Betten Auto Ctr, Inc v Dep't of Treasury*, 272 Mich App 14; 723 NW2d 914 (2006), aff'd in part and vacated in part 478 Mich 864 (2007). GM also asserts that 2007 PA 103, which amended the Use Tax Act, MCL 205.91 *et seq.*, to obviate the holding of *Betten*, was improperly enacted special legislation and, if applied retroactively, would violate GM's constitutional right to due process. Finally, GM contends that its employees' use of program vehicles was exempt from taxation under the Use Tax Act, even as amended.

The Court of Claims agreed with GM and ruled that the retroactive effect of 2007 PA 103 violated GM's right to due process because an 11-year period of retroactive application was contrary to the holding of *United States v Carlton*, 512 US 26; 114 S Ct 2018; 129 L Ed 2d 22 (1994), which permitted only a "modest" period of retroactivity for economic legislation. The Court of Claims also held that 2007 PA 103, if applied retroactively, would violate Michigan's Constitution regarding special legislation, Const 1963, art 4, § 29, because it was enacted for the sole purpose of preventing GM from receiving use tax refunds. Finally, the Court of Claims ruled that GM's program vehicles were exempt from use tax under MCL 205.94(1)(c), as amended by 2007 PA 103, because "GM manufactured cars for resale and demonstration purposes" and "is not licensed as a new vehicle dealer, and thus, is not limited to the exemption on only 25 vehicles as set forth in MCL 205.94(l)(c)(iii)." We reverse.

## I. LEGAL AND FACTUAL BACKGROUND

In its opinion and order, the Court of Claims summarized the factual background that frames the legal issues presented on this appeal:

As part of General Motors' ("GM") manufacturing and reselling business, it tests, evaluates, demonstrates, and markets its vehicles and vehicles purchased for resale for [sic] GM subsidiaries. All of GM's salaried personnel in the United States in executive, professional, technical, and other positions, with certain limited exceptions are required, to drive a GM inventory vehicle in one of the Vehicle Programs as an integral part of their job assignment. GM's employee evaluations of driving performance assist GM in the marketing, testing, research, and design of vehicles by testing and collecting data from real world vehicle operation. The vehicles are held in inventory for resale and later sold to the final consumer. The employee's family and household members are prohibited from driving program vehicles except in very limited circumstances. During all the years in issue, GM was required by the Michigan Department of Treasury ("Treasury"), through audit enforcement, to self-assess and remit use taxes on its vehicle inventory operated under the Vehicle Program, and on Marketing Vehicles.

In *Betten Auto Center v. Dep't of Treasury*, 478 Mich. 864 (2007), the Michigan Supreme Court affirmed a portion of a Court of Appeals decision where cars sold by a new car dealer are exempt from liability for any interim use to which the dealer puts them, pending resale, under the resale exemption. While *Betten* appeals were pending, GM filed two use tax refund claims. The first was filed on August 25, 2006, asking for a refund of $65,324,061 for October 1, 1996—March 26, 2002. Treasury placed the claim in abeyance. GM filed a second refund claim on September 14, 2007 seeking $51,433,651 for March 26, 2002—August 31, 2007.

On October 1, 2007, House Bill 4882 became law, as 2007 PA 103, amending the Use Tax Act. Treasury denied GM's refund claims on October 25, 2007, basing the denial on the statutory language of 2007 PA 103, which made clear GM's employees' use of the vehicles made the vehicles ineligible for the resale exemption. Enacting Section 2 of 2007 PA 103 made the amendments effective retroactively, beginning September 30, 2002, and for all tax years not

barred by the applicable statute of limitations. GM then brought suit, timely filing its initial Complaint in the Court of Claims on December 27, 2007. GM now brings this Motion for Summary Disposition pursuant to MCR 2.116(C)(10), asserting there are no genuine issues with respect to any material fact, and thus, GM is entitled to judgment as a matter of law. Treasury asks that GM's motion to [sic] be denied and summary disposition be entered for Treasury pursuant to MCR 2.116(I)(2) and MCR 2.116(C)(8).

We summarize the legal history regarding the *Betten* decision, the Use Tax Act, and its amendment by 2007 PA 103 before addressing the parties' arguments.

The use tax is designed to complement the tax imposed under the General Sales Tax Act, MCL 205.51 *et seq.* *People v Rodriguez*, 463 Mich 466, 467 n 1; 620 NW2d 13 (2000). At all pertinent times, the Use Tax Act imposed "a specific tax for the privilege of using, storing, or consuming tangible personal property in this state at a rate equal to 6% of the price of the property." MCL 205.93(1). Property is exempt from use taxation if it is "sold in this state on which transaction a tax is paid under the general sales tax act" and "if the tax was due and paid on the retail sale to a consumer." MCL 205.94(1)(a). Thus, the use tax "applies to certain personal property transactions in which the seller does not collect a sales tax on behalf of the state." *Rodriguez*, 463 Mich at 467 n 1. Before its 2007 amendment, the Use Tax Act, in general, placed the ultimate responsibility for payment of its levy on the ultimate consumer or purchaser of tangible property. MCL 205.97; *World Book, Inc v Dep't of Treasury*, 459 Mich 403, 408, 415-416; 590 NW2d 293 (1999); *Betten*, 272 Mich App at 19.

At issue in the present case are exemptions from use taxation for property "purchased for resale, demonstration purposes," which before 2007 PA 103 provided:

(1) The following are exempt from the tax levied under this act, subject to subsection (2):

* * *

(c) Property purchased for resale, demonstration purposes, or lending or leasing to a public or parochial school offering a course in automobile driving except that a vehicle purchased by the school shall be certified for driving education and shall not be reassigned for personal use by the school's administrative personnel. For a dealer selling a new car or truck, exemption for demonstration purposes shall be determined by the number of new cars and trucks sold during the current calendar year or the immediately preceding year without regard to specific make or style according to the following schedule of 0 to 25, 2 units; 26 to 100, 7 units; 101 to 500, 20 units; 501 or more, 25 units; but not to exceed 25 cars and trucks in 1 calendar year for demonstration purposes. Property purchased for resale includes promotional merchandise transferred pursuant to a redemption offer to a person located outside this state or any packaging material, other than promotional merchandise, acquired for use in fulfilling a redemption offer or rebate to a person located outside this state.

* * *

(2) The property or services under subsection (1) are exempt only to the extent that the property or services are used for the exempt purposes if one is stated in subsection (1). The exemption is limited to the percentage of exempt use to total use determined by a reasonable formula or method approved by the department. [MCL 205.94, as amended by 2004 PA 172.]

In *Betten*, the plaintiffs were "all licensed automobile dealerships selling both new and used automobiles [that] paid [Treasury] a total of $48,449.74 in use taxes on vehicles that plaintiffs purchased for resale, allowed their employees to use, and ultimately resold." *Betten*,

272 Mich App at 15. The plaintiffs had filed their claims for refunds after this Court decided *Crown Motors of Charlevoix, Ltd v Dep't of Treasury*, unpublished opinion per curiam of the Court of Appeals, issued November 4, 2003 (Docket No. 240555).

The *Crown* case also involved a new and used car dealership and, although the parties agreed that the plaintiff had purchased all vehicles for resale and in fact resold them, Treasury asserted that the interim use of the vehicles was subject to use tax. Relying on *Rodriguez*, 463 Mich 471-472, the *Crown* Court reasoned that the exemption for property "purchased for resale" in MCL 205.94(1)(c) was clear and unambiguous and that this language " 'conveys a legislative intent inconsistent with purchase for another purpose.' " *Crown*, unpub op at 3, quoting *Rodriguez*, 463 Mich at 472. Thus, the *Crown* Court held that the plaintiff was not liable for use tax because its inventory vehicles were purchased for resale, and although it was subject to interim use, under *Rodriquez*, "property is either purchased for resale or it is not; here, it was indeed purchased for resale." *Crown*, unpub op at 3.

The *Crown* Court also rejected Treasury's argument that the plaintiff's interim use of the vehicles resulted in their "conversion" to a taxable use. Treasury relied on MCL 205.97, which at that time provided, in part, that "[e]ach consumer storing, using or otherwise consuming in this state tangible personal property or services purchased for or subsequently converted to such purpose or purposes shall be liable for the tax imposed by this act . . . ." The Court noted that the primary purpose of this section was to impose the economic burden of the use tax on the consumers of property and that the Legislature had provided no guidance regarding *"how* or *when* property can be

'converted' from one purpose to another." *Crown*, unpub op at 3. The *Crown* Court also held that 1979 AC, R 205.9 did not apply because it addressed situations in which property purchased for resale was consumed rather than resold, whereas in *Crown*, the parties agreed that all property was ultimately resold. *Crown*, unpub op at 3. Consequently, the Court ruled that Treasury had not supported its conversion theory with applicable and binding authority. *Id.*

Because *Crown* was unpublished, it lacked binding precedential authority, MCR 7.215(C)(1), and on this basis, Treasury denied the *Betten* plaintiffs' claim for a refund. *Betten*, 272 Mich App at 16. But Treasury conceded that the plaintiffs were entitled to a demonstration exemption for up to 25 vehicles because the Legislature had adopted a formula for taxing demonstration vehicles in excess of that number. *Id.* at 16-17, 20; see 2002 PA 110.[1]

The *Betten* Court held that even though the plaintiffs' inventories of vehicles for sale were used in the interim before resale, "the vehicles in question are exempt from the imposition of a use tax under the resale exemption contained in MCL 205.94(1)(c)." *Betten*, 272 Mich App at 20. The *Betten* Court, like the *Crown* Court, relied on *Rodriguez* and the clear and unambiguous language of MCL 205.94(1)(c). The Court noted that the parties essentially agreed that the vehicles in question were purchased as inventory for resale and that the vehicles were, in fact, resold. Therefore, the Court held "the resale exemption applies to all the vehicles in question." *Betten*, 272 Mich App at 21.

---

[1] 2002 PA 110 amended MCL 205.93(2), effective March 27, 2002. GM apparently bases the time frames for its refund claims on the effective date of 2002 PA 110, and the parties signed waivers keeping the statute of limitations open for claims dating back to October 1, 1996. MCL 205.27a(3)(b).

Treasury also asserted in *Betten* that the interim employee use of the inventory vehicles resulted in their "conversion" to a taxable use. In light of the *Crown* decision "and for other reasons," the *Betten* Court was not persuaded by Treasury's conversion argument. *Betten*, 272 Mich App at 21-22. One of the "other reasons" for rejecting the conversion argument, the Court explained, was that MCL 205.97 imposed liability for use tax only on a "consumer." The Court held "that plaintiffs' employees' limited use of the vehicles did not transform plaintiffs or their employees into 'consumers' of the vehicles under MCL 205.97." *Id.* at 22. The *Betten* Court also utilized a dictionary definition of "consumer" to buttress this conclusion and reasoned that our Supreme Court had held that the " 'the appropriate party to pay a use tax is the consumer, not the seller.' " *Id.*, quoting *World Book*, 459 Mich at 415-416.

Although concluding the exemption for property "purchased for resale" applied, the *Betten* Court also held that vehicles in excess of 25 were taxable under MCL 205.93(2), as amended by 2002 PA 110. *Betten*, 272 Mich App at 23-26. Our Supreme Court subsequently vacated that part of the decision but affirmed this Court's decision regarding MCL 205.94(1)(c). *Betten Auto Ctr, Inc v Dep't of Treasury*, 478 Mich 864 (2007).

This Court decided *Betten* on August 1, 2006. On August 25, 2006, GM filed its first claim for a refund of the use taxes paid on its employees' use of program vehicles over the period from October 1, 1996, to March 26, 2002. Treasury held GM's claim in abeyance pending appeal of *Betten* to our Supreme Court, which issued its order on May 25, 2007. *Betten*, 478 Mich 864. On June 7, 2007, HB 4882, which later became 2007 PA 103, was introduced in the Michigan House of Representatives. Treasury and the Legislature clearly were

concerned regarding the impact of the *Betten* decision on state revenue. The legislative analysis for HB 4882 stated:

> The Department of Treasury estimates that the *Betten Auto Center* decision (See <u>Background Information</u>) has a potential one-time cost of $250.2 million based on refund claims received from automobile manufacturers and dealerships, and projected on-going costs of $29.2 million. To the extent the bill reduces refund claims and subjects converted property and services to taxation, the state would realize cost savings on the order of the above cited figures. [House Legislative Analysis, HB 4882, August 29, 2007, p 2.]

Our Supreme Court denied reconsideration in *Betten* on July 9, 2007. *Betten Auto Ctr v Dep't of Treasury*, 478 Mich 938 (2007). On September 14, 2007, GM filed its second claim for a refund of the use taxes paid on its employees' use of program vehicles for the period from March 28, 2002, to August 31, 2007.

Meanwhile, the Michigan House approved HB 4882 on September 24, 2007, and the Michigan Senate approved the bill on September 30, 2007. The Governor signed HB 4882 into law on October 1, 2007, and it became 2007 PA 103. The Legislature gave the act retroactive effect by providing as follows:

> Enacting section 1. It is the intent of the legislature that this amendatory act clarify that a person who acquires tangible personal property for a purpose exempt under the use tax act, 1937 PA 94, MCL 205.91 to 205.111, who subsequently converts that property to a use taxable under the use tax act, 1937 PA 94, MCL 205.91 to 205.111, is liable for the tax levied under the use tax act, 1937 PA 94, MCL 205.91 to 205.111.

> Enacting section 2. This amendatory act is curative and intended to prevent any misinterpretation of the ability of a taxpayer to claim an exemption from the tax levied under

the use tax act, 1937 PA 94, MCL 205.91 to 205.111, based on the purchase of tangible personal property or services for resale that may result from the decision of the Michigan court of appeals in Betten Auto Center, Inc v Department of Treasury, No. 265976, as affirmed by the Michigan Supreme Court. This amendatory act is retroactive and is effective beginning September 30, 2002 and for all tax years that are open under the statute of limitations provided in section 27a of 1941 PA 122, MCL 205.27a. [2007 PA 103.]

2007 PA 103 thus amended the Use Tax Act to "clarify" that essentially any use of property purchased for resale other than as passive inventory results in conversion of the property such that the use is taxable. 2007 PA 103 did this by amending several provisions. It amended § 7 of the Use Tax Act by striking the word "consumer" and inserting the word "person" so that "[e]ach *person* storing, using, or consuming in this state tangible personal property or services *is* liable for the tax *levied under* this act . . . ." MCL 205.97(1) (italicized words added by 2007 PA 103). The amendments also expanded the definition of "use" to provide that "[c]onverting tangible personal property acquired for a use exempt from the tax levied under this act to a use not exempt from the tax levied under this act is a taxable use." MCL 205.92(b). In addition, MCL 205.97(2) was added to provide: "A person who acquires tangible personal property or services for any tax-exempt use who subsequently converts the tangible personal property or service to a taxable use, including an interim taxable use, is liable for the tax levied under this act." Further, the definition of "purchase" was amended to include "converting tangible personal property acquired for a use exempt from the tax levied under this act to a use not exempt from the tax levied under this act." MCL 205.92(e).

The pertinent section imposing on "every person in this state a specific tax for the privilege of using, storing, or consuming tangible personal property in this state" was amended by 2007 PA 103 to add that the "act applies to a person who acquires tangible personal property or services that are subject to the tax levied under this act for any tax-exempt use who subsequently converts the tangible personal property or service to a taxable use, including an interim taxable use." MCL 205.93(1). The 2007 amendment also defined the word "convert" to mean

> putting a service or tangible personal property acquired for a use exempt from the tax levied under this act at the time of acquisition to a use that is not exempt from the tax levied under this act, whether the use is in whole or in part, or permanent or not permanent. [MCL 205.92(q).]

The word "consumer" was amended to include "[a] person who has converted tangible personal property or services acquired for storage, use, or consumption in this state that is exempt from the tax levied under this act to storage, use, or consumption in this state that is not exempt from the tax levied under this act." MCL 205.92(g)(*ii*). 2007 PA 103, however, did not disturb the holdings of *Crown* and *Betten* with respect to new vehicle dealers, providing in MCL 205.92(q) that "a motor vehicle purchased for resale by a new vehicle dealer licensed under section 248(8)(a) of the Michigan vehicle code, 1949 PA 300, MCL 257.248, and not titled in the name of the dealer shall not be considered to be converted before sale or lease by that dealer."

On the parties' motions for summary disposition, the Court of Claims ruled in favor of GM, holding that giving retroactive effect to 2007 PA 103 would violate GM's right to due process, that the act violated Michigan's constitutional provision regarding special legisla-

tion, Const 1963, art 4, § 29, and that GM's program vehicles were exempt from use tax under MCL 205.94(1)(c), as amended by 2007 PA 103. This Court granted Treasury's application for leave to appeal, and GM asserts in a timely cross-appeal several alternative grounds to affirm the Court of Claims.

## II. STANDARD OF REVIEW

Claims that a statute is unconstitutional, as well as statutory interpretation, are questions of law this Court reviews de novo. *Dep't of Transp v Tomkins*, 481 Mich 184, 190; 749 NW2d 716 (2008). A trial court's decision to grant a motion for summary disposition is also reviewed de novo. *Id.*

Statutes are presumed to be constitutional, and this presumption is especially strong with respect to tax legislation. *Caterpillar, Inc v Dep't of Treasury*, 440 Mich 400, 413; 488 NW2d 182 (1992); *Ammex, Inc v Dep't of Treasury*, 273 Mich App 623, 635; 732 NW2d 116 (2007). The party challenging the constitutionality of the statute has the burden of proving the law's invalidity. *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009). "The rules of statutory construction provide that a clear and unambiguous statute is not subject to judicial construction or interpretation." *GMAC LLC v Dep't of Treasury*, 286 Mich App 365, 372; 781 NW2d 310 (2009). In other words, "when a statute plainly and unambiguously expresses the legislative intent, the role of the court is limited to applying the terms of the statute to the circumstances in a particular case." *Id.* A party claiming an exemption from a tax has the burden of establishing that it applies:

> Tax exemptions are disfavored, and the burden of proving an entitlement to an exemption is on the party claiming the right to the exemption. Tax exemptions are in deroga-

tion of the principle that all shall bear a proportionate share of the tax burden, and therefore, a tax exemption shall be strictly construed. [*Id.* at 374-375 (citations omitted).]

Furthermore,

" 'if an exemption is found to exist, it must not be enlarged by construction, since the reasonable presumption is that the State has granted in express terms all it intended to grant at all, and that unless the privilege is limited to the very terms of the statute the favor would be extended beyond what was meant.' " [*Id.* at 375, quoting *Detroit v Detroit Commercial College*, 322 Mich 142, 148-149; 33 NW2d 737 (1948), quoting 2 Cooley, Taxation (4th ed), § 672, p 1403.]

### III. DUE PROCESS

"The Fourteenth Amendment to the United States Constitution and Const 1963, art 1, § 17 guarantee that no state shall deprive any person of 'life, liberty or property, without due process of law.' " *People v Sierb*, 456 Mich 519, 522; 581 NW2d 219 (1998). Although textually only providing procedural protections, the Due Process Clause has a substantive component that protects individual liberty and property interests from arbitrary government actions. *Id.* at 522-523; *Cummins v Robinson Twp*, 283 Mich App 677, 700-701; 770 NW2d 421 (2009). But to be protected by the Due Process Clause, a property interest must be a vested right. *Detroit v Walker*, 445 Mich 682, 698-699; 520 NW2d 135 (1994); *Sherwin v State Hwy Comm'r*, 364 Mich 188, 200; 111 NW2d 56 (1961). A vested right is "an interest that the government is compelled to recognize and protect of which the holder could not be deprived without injustice." *Walker*, 445 Mich at 699. More specifically, a vested right

> " 'is something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws; it must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exemption from a demand made by another.' " [*GMAC*, 286 Mich App at 377, quoting *Cusick v Feldpausch*, 259 Mich 349, 352; 243 NW 226 (1932), quoting 2 Cooley, Constitutional Limitations (8th ed), p 749.]

GM's claim for a refund of use taxes it paid was not a vested right but rather a mere expectation that its claim might succeed in light of the *Betten* decision. GM's claim rests on the theory that it held a vested chose in action—its refund claim—and relies on cases involving rights of action for damages to property or personal injury. But this case involves a tax—not a right of action—and the United States Supreme Court has opined that

> "[t]axation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens. Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe due process . . . ." [*Carlton*, 512 US at 33, quoting *Welch v Henry*, 305 US 134, 146-147; 59 S Ct 121; 83 L Ed 87 (1938).]

GM, as a taxpayer, does not have a vested right in a tax statute or in the continuance of any tax law. *Walker*, 445 Mich at 703; *GMAC*, 286 Mich App at 377-778.

But we also reject Treasury's argument that GM's claim regarding retroactivity is a "red herring" because 2007 PA 103 is curative legislation merely bringing clarity to existing law. "An amendment may apply retroactively where the Legislature enacts an amendment to clarify an existing statute and to resolve a

controversy regarding its meaning." *Mtg Electronic Registration Sys, Inc v Pickrell*, 271 Mich App 119, 126; 721 NW2d 276 (2006). An amendment that affects substantive rights generally will not fall within this rule. See *Brewer v A D Transp Express, Inc*, 486 Mich 50, 57; 782 NW2d 475 (2010). Although 2007 PA 103 clarified some parts of the Use Tax Act, it also codified Treasury's theory regarding the conversion of property held for a tax-exempt use to a taxable use that this Court had held was not part of the statute before its amendment. That is, because the amendment affected substantive rights or obligations, it cannot come within the rule permitting retroactive "remedial" amendments.

On the other hand, we reject as well GM's assertion that the Legislature acted illegitimately when it enacted 2007 PA 103 for the purpose of reversing a judicial decision and thus failed to satisfy the first *Carlton* due process criterion for permissible retroactive legislation: specifically, that the Legislature's "purpose in enacting the amendment was neither illegitimate nor arbitrary." *Carlton*, 512 US at 32. This is a negative statement of the substantive due process requirement that legislation that does not affect a suspect classification or involve the deprivation of a fundamental right must merely bear a reasonable relation to a permissible legislative objective. *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 404; 738 NW2d 664 (2007). Retroactive economic legislation must satisfy this rational basis test both for its prospective as well as its retrospective application. See *Carlton*, 512 US at 30-31.

GM's claim that the Legislature acted illegitimately is without merit.[2] While the Legislature may not re-

_____

[2] Indeed, GM waived this claim by not raising it below. The Court of Claims noted that "[GM] does not claim the legislature's purpose" in enacting 2007 PA 103 "was illegitimate or arbitrary."

verse a judicial decision or repeal a final judgment, *Wylie v Grand Rapids City Comm*, 293 Mich 571, 582; 292 NW 668 (1940), that did not occur here. The *Betten* decision held the exemption for property "purchased for resale" applied to automobile dealers despite interim business use before resale. But 2007 PA 103 specifically exempted licensed new vehicle dealers from its conversion net. MCL 205.92(q). The amendment also added that the "purchased for resale" exemption includes "[m]otor vehicles purchased for resale purposes by a new vehicle dealer licensed under section 248(8)(a) of the Michigan vehicle code, 1949 PA 300, MCL 257.248." MCL 205.94(1)(c)(*iv*). Consequently, 2007 PA 103 did not "reverse a judicial decision or repeal [a] final judgment . . . ." *Wylie*, 293 Mich at 582. Moreover, it is legitimate for the Legislature to amend a law that it believes the judiciary has wrongly interpreted. See *Gen Motors v Romein*, 503 US 181, 191; 112 S Ct 1105; 117 L Ed 2d 328 (1992); *GMAC*, 286 Mich App at 380 ("[I]t is the province of the Legislature to acquiesce in the judicial interpretation of a statute or to amend the legislation to obviate a judicial interpretation.").

A legislature's action to mend a leak in the public treasury or tax revenue—whether created by poor drafting of legislation in the first instance or by a judicial decision—with retroactive legislation has almost universally been recognized as "rationally related to a legitimate legislative purpose." *Carlton*, 512 US at 35. But the Court of Claims here found that 2007 PA 103 violated due process on the basis that the *Carlton* majority held that substantive due process places temporal limits on the reach of retroactive tax legislation and that 2007 PA 103 exceeded those limits. The *Carlton* majority upheld under the Due Process Clause the retroactive legislation in that case because "[f]irst, Congress' purpose in enacting the amendment was

neither illegitimate nor arbitrary." *Carlton*, 512 US at 32. Specifically, the Court found that "Congress acted to correct what it reasonably viewed as a mistake" in the original legislation "that would have created a significant and unanticipated revenue loss." *Id.* Further, there was nothing to indicate that Congress deliberately sought to induce taxable transactions. *Id.* The *Carlton* majority also opined that Congress imposed only a "modest" period of retroactivity:

> Second, Congress acted promptly and established only a modest period of retroactivity. . . . Congress "almost without exception" has given general revenue statutes effective dates prior to the dates of actual enactment. This "customary congressional practice" generally has been "confined to short and limited periods required by the practicalities of producing national legislation." . . . In *Welch* v *Henry*, 305 US 134 (1938), the Court upheld a Wisconsin income tax adopted in 1935 on dividends received in 1933. The Court stated that the " 'recent transactions' " to which a tax law may be retroactively applied "must be taken to include the receipt of income during the year of the legislative session preceding that of its enactment." *Id.*, at 150. Here, the actual retroactive effect of the 1987 amendment extended for a period only slightly greater than one year. Moreover, the amendment was proposed by the IRS in January 1987 and by Congress in February 1987, within a few months of [26 USC] 2057's original enactment. [*Id.* at 32-33.]

Additionally, in distinguishing cases from a different era, the *Carlton* majority opined that the retroactive legislation "at issue here certainly is not properly characterized as a 'wholly new tax,' and its period of retroactive effect is limited." *Id.* at 34. But in summarizing its holding, the Court did not specifically include a temporal "modesty" requirement: "Because we conclude that retroactive application of the 1987 amendment to § 2057 is rationally related to a legitimate legislative purpose, we conclude that the amendment as

applied to Carlton's 1986 transactions is consistent with the Due Process Clause." *Id.* at 35.

We agree that a majority of justices on the United States Supreme Court would hold that the Due Process Clause imposes some limit on the retroactive reach of tax legislation. The Kentucky Supreme Court in *Miller v Johnson Controls, Inc*, 296 SW3d 392 (Ky, 2010), attempted to synthesize the views of the justices in *Carlton* and concluded that the modesty requirement is part of the rational basis test with its length determined on a case-by-case basis considering the totality of the facts and circumstances. The Kentucky Supreme Court opined:

> Retroactive application of a statute need only be (1) supported by a legitimate legislative purpose (2) furthered by rational means, which includes an appropriate modesty requirement. This requires analysis of the facts and circumstances of each case, rather than applying a specified modesty period. The pertinent question is whether the period of retroactivity is one that makes sense in supporting the legitimate governmental purpose (rationally related).
>
> * * *
>
> Clearly, eight of the nine justices viewed what may "rationally further" a legitimate governmental interest as being broader than the one year that only Justice O'Connor would impose as a "modesty" measure. Thus what is "modest" or acceptable for due process purposes depends on the facts of the case, including notice, settled expectations, detrimental reliance, etc. [*Id.* at 399.]

Balancing the government's interest in retroactive application of a statute against that of the taxpayer's interest in finality must be added to this mix of circumstances to determine whether the limit of modest retroactivity is reached. Justice O'Connor in her concur-

ring opinion in *Carlton* noted that no case had held that the government has "unlimited power to 'readjust rights and burdens . . . and upset otherwise settled expectations.' " *Carlton*, 512 US at 37 (O'Connor, J., concurring) (citation omitted). In Justice O'Connor's view, "The governmental interest in revising the tax laws must at some point give way to the taxpayer's interest in finality and repose." *Id.* at 37-38.

The totality of circumstances in this case establishes that the retroactive application of 2007 PA 103 does not exceed the modesty limitation of the Due Process Clause. First, the amendment does not reach back in time to assess a "wholly new tax" on long-concluded transactions. Rather, it seeks to confirm a tax that had been assessed by Treasury and paid by taxpayers for many years. Indeed, GM never sought to contest its liability for the use taxes it paid for years until after the *Betten* decision, which extended a hope that such a refund claim might be successful. Second, GM did not act in reliance on an expectation its activity would not be taxed. Instead, GM utilized some of its manufactured vehicles for its own business purposes with notice that Treasury had asserted that such activity was taxable. In short, GM did not rely on the preamendment version of the Use Tax Act to its detriment. Third, the Legislature acted promptly in response to the *Betten* decision to correct what might have resulted in a significant loss of previously collected revenue. Fourth, the nominal period to which the amendment retrospectively applies— five years—cannot be said to extend beyond the taxpayers' interest in finality and repose because the period of retroactivity is consistent with the applicable statute of limitations. Moreover, although 2007 PA 103 applies in the case of GM beyond the statute of limitations' general rule, it does so only because GM voluntarily waived application the statute of limitations. By its

waiving application of the statute of limitations, we conclude that GM has also waived any interest it may have had under the Due Process Clause to "finality and repose." *Carlton*, 512 US at 37-38 (O'Connor, J., concurring). Finally, the period of retroactive application for 2007 PA 103 is comparable to the time frames of other retroactive legislation that this Court, other state courts, and federal courts have held were within the modesty limits of the Due Process Clause.[3]

In summary, GM has not overcome the presumption that 2007 PA 103 is constitutional, and the Court of Claims erred by concluding otherwise. 2007 PA 103 does not violate due process because the act "is rationally related to a legitimate legislative purpose"—the limit-

---

[3] See *GMAC*, 286 Mich App at 378 (affirming a seven-year retroactive application of an amendment to MCL 205.54i); *Enterprise Leasing Co of Phoenix v Arizona Dep't of Revenue*, 221 Ariz 123; 211 P 3d 1 (Ariz App, 2008) (approving a six-year period of retroactivity amending pollution control tax credit excluding property attached to motor vehicles); *King v Campbell Co*, 217 SW3d 862 (Ky App, 2006) (upholding 2005 legislation denying refunds of county taxes overpaid since 1986 under a 2004 judicial decision); *Miller*, 296 SW3d 392 (affirming legislation adopted in 2000 that retroactively ratified a 1988 tax agency policy barring related business entities from filing unified returns, which a 1994 judicial decision had ruled violated Kentucky law); *Zaber v City of Dubuque*, 789 NW2d 634 (Iowa, 2010) (approving legislation ratifying city-imposed cable television franchise fees retroactively for 5½ years after a court had ruled the fees illegal); *Canisius College v United States*, 799 F2d 18 (CA 2, 1986) (approving tax legislation with four-year retroactivity that ratified an IRS revenue ruling of doubtful validity); *Licari v Internal Revenue Comm'r*, 946 F2d 690, 695 (CA 9, 1991) (approving the four-year retroactive application of an enhanced tax penalty approved as "a rational means by which to guard the public fisc by reimbursing the government for heavy burden of investigative and prosecutorial costs incident to ferreting out tax underpayment"); *Tate & Lyle, Inc v Internal Revenue Serv Comm'r*, 87 F3d 99 (CA 3, 1996) (upholding six-year retroactive application of a tax regulation requiring the taxpayer to use a cash method of accounting); *Montana Rail Link, Inc v United States*, 76 F3d 991 (CA 9, 1996) (approving four-year retroactive application of a tax statute).

ing of an interpretation of the Use Tax Act that might have caused significant and unanticipated loss of tax revenue that had been collected in good faith. See *Carlton*, 512 US at 32, 35. To the extent the Due Process Clause limits the reach of retroactive legislation to only a modest time frame, that limitation was not exceeded here. 2007 PA 103 does not readjust rights and burdens or upset settled expectations such that GM's "interest in finality and repose" exceeds the state's interest in revising the Use Tax Act to protect the precarious public treasury from refund claims that are as much as 11 years old. GM does not have a protected, vested right to the continuation of a tax statute, and the period of retroactivity here does not exceed the limits of the Due Process Clause. The Court of Claims' ruling to the contrary must be reversed.

### IV. SPECIAL LEGISLATION

Treasury argues that the Court of Claims clearly erred by ruling that 2007 PA 103 violates the Michigan constitutional provision restricting special legislation. We agree.

Const 1963, art 4, § 29 provides:

> The legislature shall pass no local or special act in any case where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question. No local or special act shall take effect until approved by two-thirds of the members elected to and serving in each house and by a majority of the electors voting thereon in the district affected. Any act repealing local or special acts shall require only a majority of the members elected to and serving in each house and shall not require submission to the electors of such district.

" 'The mere fact that a law only applies . . . to a limited number does not make it special instead of

general. It may be general within the constitutional sense and yet, in its application, only affect one person or one place.' " *Rohan v Detroit Racing Ass'n*, 314 Mich 326, 349; 22 NW2d 433 (1946) (citation omitted). If a law is general and uniform in its operation upon all persons in like circumstances, it is general in the constitutional sense. *Id* at 350.

In this case, no language in 2007 PA 103 limits its application to only GM. Further, GM concedes that in its prospective application the act is "clearly general legislation applicable to all taxpayers." Yet there is nothing in the retrospective application of the law that changes its general character. While it is clear that 2007 PA 103 was intended to preclude large refund claims, particularly by automobile manufacturers, the language used by the statute is general and has broad application. The only evidence that GM asserts supports its claim is Treasury's revised estimates of lost revenue when it learned that other automobile manufacturers (Ford Motor Company and DaimlerChrysler Corporation) did not intend to seek use tax refunds in the wake of the *Betten* decision. However, the fact that other vehicle manufacturers decided not to seek a use tax refund does mean that the act did not apply to Ford and DaimlerChrysler. Instead, other manufacturers might have reasoned that the Legislature would act promptly to adopt legislation "to obviate a judicial interpretation." *GMAC*, 286 Mich App at 380. If so, those taxpayers might have rationally decided to invest resources on manufacturing and marketing automobiles rather than pursuing a likely futile refund claim for use taxes that had been paid and accounted for in prior years. In sum, nothing on the face of 2007 PA 103, or any evidence presented below, supports the conclusion that 2007 PA 103 is special legislation governed by Const 1963, art 4, § 29.

The Court of Claims' reasoning regarding the lack of legislative committee hearings, which GM does not appear to adopt, also does not support the court's ruling. The Court of Claims cited no legal authority for concluding that the lack of committee hearings was a basis for holding that 2007 PA 103 is special legislation. As Treasury argues, GM participated in the political process during the Legislature's deliberative process, and 2007 PA 103 was adopted in compliance with all requisite procedural requirements. Although no committee hearings were held on HB 4882 before its adoption, it became law because it satisfied the constitutional requirements of bicameralism and presentment. Const 1963, art 4, §§ 22, 26, and 33. The lack of committee hearings is irrelevant. "[T]he Journals of the House and Senate are conclusive evidence of those bodies' proceedings, and when no evidence to the contrary appears in the journal, [courts] will presume the propriety of those proceedings." *Michigan Taxpayers United, Inc v Governor*, 236 Mich App 372, 379; 600 NW2d 401 (1999). Nothing here rebuts the presumption of propriety regarding the enactment of 2007 PA 103. The Court of Claims must be reversed on this issue.

### V. STATUTORY CONSTRUCTION

Treasury argues that the Court of Claims abused its discretion by allowing GM to amend its complaint and erred by ruling that GM qualified for an exemption from use taxes for demonstration purposes.[4] Treasury

---

[4] It is not entirely clear whether the Court of Claims based this ruling on the statute as amended by 2007 PA 103 or as the statute existed before the amendment. Because the court cited MCL 205.94(1)(c)(*iii*), which reflects the changes in the structure of subdivision (c) made by 2007 PA 103, we assume that the court based its ruling on the amended statute.

also asserts the exemption provided by MCL 205.94(1)(c)(*iii*) is only available for new car dealers. We disagree.

Treasury has not established that the Court of Claims abused its discretion by allowing GM to amend its complaint to add a claim that its program vehicles were also exempt under the "demonstration purposes" exemption. While the amendment asserted a new legal theory, it did not raise a new claim and Treasury has not shown that granting the amendment prejudiced it.

Furthermore, nothing in the first clause of MCL 205.94(1)(c)(*iii*) limits its application to new car dealers as Treasury asserts. The plain language of the amended statute provides in part: "The following are exempt from the tax levied under this act . . . : Property purchased for demonstration purposes." MCL 205.94(1)(c)(*iii*). Although the subparagraph places limits on the exemption for new vehicle dealers, the "demonstration purposes" exemption is not itself limited to new car dealers. Nevertheless, for the reasons set forth later, we conclude as a matter of statutory construction that GM does not qualify for either the "purchased for resale" or "purchased for demonstration purposes" exemption because it manufactured rather than purchased its program vehicles and because its program vehicles were not used for demonstration purposes at the retail sales level.

Although GM asserts it clearly was entitled to an exemption from use taxation under the preamendment version of MCL 205.94(1)(c) for "[p]roperty purchased for resale, demonstration purposes," its actions in not filing a claim for a refund until after this Court decided *Betten* belie this contention. We agree with Treasury that clear differences exist between GM and the *Betten* plaintiffs. Most notably, GM *manufactures* new ve-

hicles, marketing them through retailers like the *Betten* plaintiffs, who were new and used vehicle *dealers*. The *Betten* plaintiffs "purchased for resale" the vehicles in their inventory, and the exemption of MCL 205.94(1)(c) remained despite other interim business use before a resale occurred. *Betten*, 272 Mich App at 20, 23. This Court rejected Treasury's argument that the *Betten* plaintiffs' vehicles were "converted" to a taxable use by applying dictionary definitions to the word "consumer" in MCL 205.97, *Betten*, 272 Mich App at 22, but our Supreme Court criticized using a dictionary when the Use Tax Act provided its own definitions, *Betten*, 478 Mich App at 864. Thus, the Use Tax Act's own definitions must be applied if available. Before the enactment of 2007 PA 103, the Use Tax Act defined "purchase" as follows:

> "Purchase" means to *acquire for a consideration*, whether the acquisition is effected by a *transfer* of title, of possession, or of both, or a license to use or consume; whether the *transfer* is absolute or conditional, and by whatever means the *transfer* is effected; and whether *consideration is a price* or rental in money, or by way of exchange or barter. [MCL 205.92(e), as amended by 2004 PA 172 (emphasis added).]

As defined by MCL 205.92(e), "purchase" explicitly requires an acquisition of property for consideration of something of value—money or other property. Also, "purchase" explicitly requires a *transfer* of property, either of title or possession, or a license to use or consume, which implicitly must occur from one person to another. While GM might have acquired the materials and labor necessary to assemble its vehicles, it did not acquire them for consideration in a transfer from another person. The Court of Claims noted that "GM *manufactured* cars for resale and demonstration purposes through its Vehicle Programs in question." (Emphasis added.)

GM admits that it manufactured the majority of its program vehicles but that some were obtained from its subsidiaries. We conclude that GM's acquisition of vehicles from its subsidiaries does not come within the definition of "purchase" under MCL 205.92(e) because a transfer for consideration is explicitly required by subsection (e), which implicitly requires a transfer from one person to another. The use tax applies to a "person," MCL 205.93(1), and "person" is defined to include any "firm, partnership, joint venture, association, . . . company, . . . or any other group or combination acting as a unit, and the plural as well as the singular number, unless the intention to give a more limited meaning is disclosed by the context." MCL 205.92(a). GM and its subsidiaries "acting as a unit" constitute a "person" under the Use Tax Act, and that person manufactures vehicles that are marketed to the public through retail dealers. We hold that GM cannot "purchase" vehicles from itself (its subsidiaries) to qualify for a use tax exemption under MCL 205.94(1)(c).

The Legislature in adopting the Use Tax Act clearly recognized the distinction between the words "purchase" and "manufacture." In the very next subdivision after defining "purchase," MCL 205.92(f) defines the word "price," in part, by defining "manufacture." In relation to defining "price" for tangible personal property affixed to real estate, MCL 205.92(f) provided before amendment by 2007 PA 103: "For purposes of this subdivision, 'manufacture' means to convert or condition tangible personal property by changing the form, composition, quality, combination, or character of the property . . . ." Thus, we find that GM did not "purchase" its inventory of vehicles as "purchase" is defined by the Use Tax Act; it "manufactured" them. Consequently, GM did not have a vested right to a refund of use tax paid under the "purchased for resale"

exemption as it existed before the enactment of 2007 PA 103. In addition, this same analysis applies to the "purchased for demonstration purposes" exemption as it existed before the enactment of 2007 PA 103. This is because the word "purchased" in the phrase "[p]roperty purchased for resale [or] demonstration purposes" in MCL 205.94(1)(c) modified both "resale" and "demonstration purposes." In other words, a prerequisite for the application of either exemption is that property be "purchased" for either "resale" or "demonstration purposes." Since GM did not "purchase" its vehicles, but "manufactured" them, GM does not qualify for either exemption. This conclusion is buttressed by the rule of statutory construction that tax exemptions must be strictly construed, must never be implied, and must be expressed by the Legislature in clear and unmistakable terms. See *GMAC*, 286 Mich App at 375.

This analysis applies with respect to GM's claims for a refund under the Use Tax Act both before and after the act's amendment by 2007 PA 103. Under both versions of the act, exemptions for resale and demonstration purposes depend on property being "purchased" for those purposes. Although the 2007 legislation did amend the definition of "purchase" to include conversion from a nontaxable use to a taxable use, this amendment does not assist GM. Specifically, 2007 PA 103 added to MCL 205.92(e) the following: "Purchase includes converting tangible personal property acquired for a use exempt from the tax levied under this act to a use not exempt from the tax levied under this act." But the definition of "purchase" as discussed earlier remains. The amended definition does not help GM because its vehicles are manufactured rather than purchased. A conversion from nontaxable to taxable use cannot occur if the property and its use do not qualify initially as exempt.

Moreover, we conclude Treasury correctly asserts the "demonstration purposes" exemption is intended to apply at the retail sales level, i.e., to permit use without tax of demonstrator vehicles for the purpose of inducing actual sales from actual prospective consumers. This conclusion is supported by GM's own argument that this Court should apply the Michigan Vehicle Code definition of "demonstrator" as "a motor vehicle used by a prospective customer or a motor vehicle dealer or his agent for testing and demonstration purposes." MCL 257.11a. This definition describes a dealer's, dealer's agent's, or customer's (an actual retail purchaser) testing or demonstrating a motor vehicle. Dealers sell and customers buy. So the only reasonable reading of this definition is that it relates to "testing and demonstration" in furtherance of a potential retail sale. In contrast, GM uses its program vehicles for purposes of quality control and to increase awareness in the general public of its products. As GM summarizes in its brief on appeal, "the purpose of the Vehicle Programs is to collect data essential to the evaluation of product quality and performance in a continuous and timely manner, and to increase the visibility of, and consumer interest in, GM vehicles." Because GM does not use its program vehicles for the purpose of inducing actual retail sales by demonstrating vehicles to actual customers but rather for quality control and marketing, it does not qualify for the "purchased for demonstration purposes" exemption of MCL 205.94(1)(c)(*iii*).

Given our construction of the statute, we hold that the Court of Claims erred by ruling that "GM is exempt from paying use tax on all vehicles used for resale and demonstration purposes." GM does not qualify for the resale exemption or the "demonstration purposes" exemption under either version of the Use Tax Act. Indeed, this construction of the statute renders GM's

constitutional claims moot because even if we were to determine that 2007 PA 103 was unconstitutional, GM would not be entitled to the relief it seeks, a refund of use taxes paid. An issue is moot if an event has occurred that renders it impossible for the court to grant relief. *City of Warren v Detroit*, 261 Mich App 165, 166 n 1; 680 NW2d 57 (2004). An issue is also moot when a judgment, if entered, cannot for any reason have a practical legal effect on the existing controversy. *People v Richmond*, 486 Mich 29, 34-35; 782 NW2d 187 (2010). But we may review a moot issue if it is publicly significant and likely to recur, yet may evade judicial review. *City of Warren*, 261 Mich App at 166 n 1. We have done so here.

In sum, the Court of Claims erred by ruling as a matter of statutory construction that "GM is exempt from paying use tax on all vehicles used for resale and demonstration purposes." GM did not "purchase" its vehicle inventory as that word is defined by MCL 205.92(e); rather, GM manufactured those vehicles. MCL 205.94(1)(c) requires that property be purchased for resale or demonstration purposes to assert those exemptions from use taxation. Moreover, because GM does not use its program vehicles for the purpose of inducing actual retail sales by demonstrating vehicles to actual customers but rather for quality control and marketing in the broad sense, it does not qualify for the "purchased for demonstration purposes" exemption of MCL 205.94(1)(c)(*iii*), as amended by 2007 PA 103.

### VI. GM'S CROSS-APPEAL

GM presents several arguments in its cross-appeal as alternative grounds to affirm the Court of Claims' ruling in its favor. Generally, an issue is not properly preserved if it is not raised before, addressed by, or decided by the lower court or administrative tribunal.

*Polkton Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). Although this Court need not address an unpreserved issue, it may overlook preservation requirements when the failure to consider an issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented. *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). Because the issues GM raises present questions of law and the facts necessary to resolve them have been presented, this Court may address them. *Id*. In addition, Treasury concedes that the issues GM raises on cross-appeal have been properly preserved. Because the parties have briefed the issues raised, there is no impediment to this Court's deciding them.

### A. THE TAKING CLAUSE

GM argues that the retroactive application of 2007 PA 103 denied it a vested right to a refund of use taxes paid in error, which violates both the Due Process Clause and the Taking Clause. US Const, Am V. We disagree.

We reject GM's claim to a vested right and its due process arguments for the reasons already discussed. GM's Fifth Amendment argument also fails. The government's exercise of its taxing power "does not constitute a Fifth Amendment taking unless the taxation is so 'arbitrary as to constrain to the conclusion that it was not the exertion of taxation, but a confiscation of property . . . .' " *Quarty v United States*, 170 F3d 961, 969 (CA 9, 1999), quoting *Brushaber v Union Pacific R Co*, 240 US 1, 24; 36 S Ct 236; 60 L Ed 493 (1916). In this case, 2007 PA 103 furthered a legitimate state

interest of preserving the public treasury, and its retro-active application is rationally related to this legitimate state interest. Consequently, 2007 PA 103 does not violate the Due Process Clause. *Carlton*, 512 US at 30-31, 33. Having satisfied the Due Process Clause, it would be illogical to find the retroactive application of 2007 PA 103 so arbitrary as to offend the Taking Clause. See *Quarty*, 170 F3d at 969. GM's Taking Clause claim fails to serve as an alternative basis to sustain the Court of Claims' ruling.

### B. THE TITLE-OBJECT CLAUSE

GM argues that the title of 2007 PA 103 fails to satisfy the Title-Object Clause of the Michigan Consti-tution. Const 1963, art 4, § 24 provides in part: "No law shall embrace more than one object, which shall be expressed in its title." The "object" of a law is its general purpose. GM contends that the title of 2007 PA 103 does not mention that it is given retroactive effect, clarifies the *Betten* decision, eliminates GM's resale exemption, and redefines the term "convert." There-fore, GM argues, the act violates Const 1963, art 4, § 24. We disagree.

The purpose of the Title-Object Clause is to ensure "that legislators and the public receive proper notice of legislative content and prevents deceit and subterfuge." *Pohutski v Allen Park*, 465 Mich 675, 691; 641 NW2d 219 (2002). "The 'object' of a law is defined as its general purpose or aim." *Id*. The constitutional require-ment should be construed reasonably and permits a bill enacted into law to "include all matters germane to its object, as well as all provisions that directly relate to, carry out, and implement the principal object." *Id*.

Finally, the constitutional requirement is not that the title refer to every detail of the act; rather, "[i]t is sufficient

> that 'the act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose . . . .' " [*Id.* at 691-692, quoting *City of Livonia v Dep't of Social Servs*, 423 Mich 466, 501; 378 NW2d 402 (1985) (citations omitted).]

Enrolled House Bill 4882 that the Governor signed into law on October 1, 2007, becoming 2007 PA 103, is titled:

> AN ACT to amend 1937 PA 94, entitled "An act to provide for the levy, assessment and collection of a specific excise tax on the storage, use or consumption in this state of tangible personal property and certain services; to appropriate the proceeds thereof; and to prescribe penalties for violations of the provisions of this act," by amending sections 2, 3, 4, and 7 (MCL 205.92, 205.93, 205.94, and 205.97), sections 2, 3, and 4 as amended by 2004 PA 172.

The title thus states that the act's general object is to amend §§ 2, 3, 4, and 7 of the Use Tax Act, which are codified in MCL 205.92, 205.93, 205.94, and 205.97. This title clearly states the act's general purpose, and all details in 2007 PA 103 are germane to this object. The particular details of the amendments of §§ 2, 3, 4, and 7 of the Use Tax Act need not be specified in the amendatory act's title to withstand scrutiny under Const 1963, art 4, § 24. *Pohutski*, 465 Mich at 691-692. Indeed, the title succinctly states its one, and only one, general purpose. Nothing more is constitutionally required. GM has not overcome the presumption that 2007 PA 103 is constitutional. *Health Care Ass'n Workers Compensation Fund v Bureau of Worker's Compensation Dir*, 265 Mich App 236, 251; 694 NW2d 761 (2005). GM's Title-Object Clause argument fails to serve as an alternative basis to sustain the Court of Claims' ruling.

### C. PERIOD OF RETROACTIVITY

GM argues that assuming that 2007 PA 103 is constitutional, its plain terms limit its retroactive effect to tax periods beginning September 30, 2002. GM argues that, at a minimum, it is entitled to a tax refund for the period from October 1, 1996, to September 29, 2002. GM contends that the word "and" in enacting section 2 of 2007 PA 103 establishes two conditions for the amendment's retroactive application, both of which must be satisfied. We disagree.

First, GM's underlying premise—that it is entitled to a use tax refund under the Use Tax Act as it existed before the enactment of 2007 PA 103, as interpreted by the *Betten* decision—is misplaced for the reasons discussed in part V of this opinion. Second, the Legislature's use of the conjunction "and" does not serve to establish two criteria for the retroactive application of 2007 PA 103; rather, it sets alternative temporal markers for the extent of the act's retroactive application.

When drafting statutes, the Legislature often misuses the words "and" and "or." *Miller-Davis Co v Ahrens Const, Inc*, 285 Mich App 289, 308; 777 NW2d 437 (2009). The words used in a statute must be construed in light of the general purpose the Legislature sought to accomplish. *Id*. Further, "[o]nce the intention of the Legislature is discovered, this intent prevails regardless of any conflicting rule of statutory construction." *GMAC*, 286 Mich App at 372. The Legislature expressly sought to apply 2007 PA 103 retroactively, and the phrase at issue sets the outer limits—not conditions—for that retroactivity.

"The term 'and' is defined as a conjunction, and it means 'with; as well as; in addition to[.]' " *Amerisure Ins Co v Plumb*, 282 Mich App 417, 428; 766 NW2d 878 (2009), quoting *Random House Webster's College Dic-*

*tionary* (1997). Thus, the pertinent sentence may be read: "This amendatory act is retroactive and is effective beginning September 30, 2002 [as well as; in addition to] for all tax years that are open under the statute of limitations provided in section 27a of 1941 PA 122, MCL 205.27a." See enacting section 2 of 2007 PA 103. Because MCL 205.27a, to which the Legislature specifically referred when it set its temporal limits for retroactivity, permits the tolling of the period of limitations by agreement extending back before September 30, 2002, limiting the retroactive application of 2007 PA 103 to tax periods beginning September 30, 2002, only would render the latter part of the sentence nugatory. We conclude that the Legislature intended to extend the retroactive application of 2007 PA 103 back to September 30, 2002, "as well as" or "in addition to" as far back as any tax year for which the statute of limitations may be open under MCL 205.27a. This interpretation is consistent with the general purpose of the statute to limit refund claims premised on the *Betten* decision. The Legislature intended that the act apply to all taxpayers that might still be able to claim a refund. GM's interpretation of the sentence at issue would frustrate the Legislature's intent. The intention of the Legislature prevails regardless of any conflicting rule of statutory construction. *GMAC*, 286 Mich App at 372.

### D. THE SEPARATION OF POWERS

GM argues that Treasury's failure to act on GM's August 25, 2006, refund claim in light of the published *Betten* decision denied GM its right to due process and also violated the constitutional principle of the separation of powers. We disagree.

GM's argument on this issue has no merit. Indeed, GM cites no authority for the proposition that a judg-

ment in favor of one party must be applied to a different person or entity that was not a party to the judgment and has different factual circumstances. Even if GM were correct that it would be entitled to a refund if the principles of *Betten* were applied to GM's factual situation, GM cites no authority that would preclude Treasury from litigating whether the *Betten* rationale should be extended to GM's factual situation. The failure to cite authority for a position constitutes abandonment of that issue. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221; 761 NW2d 293 (2008).

In addition, as discussed already, GM is not entitled to a refund under the statute as amended pursuant to the Due Process Clause. And even under the statute before its amendment, GM was not entitled to a use tax exemption intended for "[p]roperty purchased for resale, demonstration purposes . . . ." MCL 205.94(1)(c), as amended by 2004 PA 172. Finally, Treasury's actions did not offend the constitutional principle of the separation of powers because by holding GM's claim in abeyance, Treasury was not reversing, repealing, or otherwise failing to comply with the *Betten* judgment. See *Taxpayers United for the Mich Constitution, Inc v Detroit*, 196 Mich App 463, 468-469; 493 NW2d 463 (1992), and *Wylie*, 293 Mich at 582. This argument fails to serve as an alternative basis to sustain the Court of Claims' ruling.

### VII. CONCLUSION

For the reasons discussed in this opinion, we reverse and remand for entry of judgment in favor of the Department of Treasury. We do not retain jurisdiction. No taxable costs shall be assessed pursuant to MCR 7.219 because questions of public policy are involved.