# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* RAYOLA A. BANFIELD IRREVOCABLE
TRUST.

---

TONI RAE BANFIELD, TRUSTEE,

       Appellant,

v

NANCY L. DAY, DIANA KAYE GENTRY,
JOHN L. BANFIELD, JAMES R. BANFIELD,
and FIRST NATIONAL BANK IN HOWELL,

       Appellees.

UNPUBLISHED
May 24, 2016

Nos. 321204; 325422
Livingston Probate Court
LC No. 2013-014446-TV

---

*In re* RAYOLA A. BANFIELD REVOCABLE
TRUST.

---

TONI RAE BANFIELD, TRUSTEE,

       Appellant,

v

NANCY L. DAY, DIANA KAYE GENTRY,
JOHN L. BANFIELD, JAMES R. BANFIELD,
and FIRST NATIONAL BANK IN HOWELL,

       Appellees.

No. 321206; 325423
Livingston Probate Court
LC No. 2013-014447-TV

---

Before: SAAD, P.J., and WILDER and MURRAY, JJ.

PER CURIAM.

In Docket Nos. 321204 and 321206, appellant Toni Rae Banfield, trustee of the
Irrevocable Trust Agreement of Rayola A. Banfield ("Insurance Trust") and the Revocable

-1-

Living Trust Agreement of Rayola A. Banfield ("ROB Trust"),[1] appeals as of right the March 4, 2014 consent orders, which amended the orders entered on January 29, 2014, and appointed Dale Schaller as "Successor Trustee." In Docket Nos. 325422 and 325423, appellant appeals as of right the October 24, 2014 order granting the request of appellees, Nancy L. Day, Diana Kay Gentry, John L. Banfield, and James R. Banfield, for attorney fees and costs to be paid from trust assets in the amount of $20,834.25.[2] We affirm the probate court's decision to remove the trustees, reverse the probate court's decision to appoint Dale Schaller as the successor trustee, and remand for further proceedings in Docket Nos. 321204 and 321206. We vacate the award of attorney fees and remand for rehearing and redetermination of the amount in Docket Nos. 325422 and 325423.

## I. FACTS AND PROCEEDINGS

Rayola A. Banfield, the grantor of the trusts at issue here, died July 2, 2012. The Insurance Trust appointed respondent and Gentry as independent cotrustees upon the grantor's death, whereas the ROB Trust appointed respondent, Gentry, and Day as independent cotrustees upon the grantor's death.

Article Eighth, Section A.16 of the Insurance Trust[3] provides that the trustee has the power and authority "[t]o make all discretionary decisions provided for, permitted or required by the provisions of this Trust Agreement, in its sole, absolute and uncontrolled discretion. . . ." Article Eighth, Section A.19 of the Insurance Trust[4] similarly provides:

> Except as otherwise specifically limited in this Article EIGHTH, all the rights, powers (including powers of sale and other discretionary powers of every description) and authority herein granted to the TRUSTEE(S) and all of the duties, obligations and liabilities herein imposed upon the TRUSTEE(S) shall inure to, be fully exercisable by and be binding upon any and all TRUSTEE(S), whether or not herein named and howsoever nominated, appointed or elected to act as such. No TRUSTEE(S) shall be required to file accounts or reports of administration of any trust with any court, . . . nor to seek or obtain the authority, approval or ratification of any court with respect to the exercise or omission to exercise any power herein conferred upon any TRUSTEE(S).

---

[1] Although appellant contends that she is appealing in her individual capacity and as trustee of the trusts, her claim of appeal indicates only that she is appealing in her capacity as trustee of the trusts. However, she was removed as the trustee below and the proceedings were not stayed. The replacement trustee is not a party to this appeal.

[2] In the proceedings below, appellant Toni Rae Banfield was the respondent and appellees Nancy L. Day, Diana Kaye Gentry, John L. Banfield, and James R. Banfield were the petitioners. We refer to those parties as respondent and petitioners, respectively.

[3] Article Twelfth, Section A.20 of the ROB Trust is a similar provision.

[4] Article Twelfth, Section A.24 of the ROB Trust is a similar provision.

Article Eighth, Section B of the Insurance Trust[5] provides:

IT IS GRANTOR'S GENERAL INTENTION AND PURPOSE, except as otherwise provided in this Trust Agreement, to confer upon all TRUSTEES the broadest and fullest power and authority with respect to each trust created hereunder which it is possible for an individual to exercise over his own property, and the TRUSTEE(S) shall exercise such powers and authority in its sole discretion, in such manner, and to such extent, as it shall deem advisable.

Article Ninth, Section C(2) of the Insurance Trust[6] provides:

The term "Independent TRUSTEE" shall mean and include, in addition to any persons, individual or corporate, elsewhere herein designated as an "Independent TRUSTEE," any state or national banking corporation or association or other corporate entity authorized by law to act as TRUSTEE hereunder, which has more than $10,000,000.00 of combined capital and surplus (no substantial portion of which is owned or controlled, directly or indirectly, by GRANTOR or by any beneficiary hereunder).

Article Tenth of the Insurance Trust[7] provides, in part:

C.   At any time after GRANTOR'S death and after the death, declination, resignation, judicial removal or other unavailability of all individuals hereinabove designated to act as TRUSTEES, a majority of the beneficiaries of the trusts hereof who have at that time any vested interest in any trust herein established (excluding, however, said JOHN L. BANFIELD) shall have the right to remove any Independent TRUSTEE or TRUSTEES; provided that such removal must be for reasonable cause (which shall be deemed to include, but shall not be limited to, inadequate performance; serious personality conflict . . . ); provided, further, if any Independent TRUSTEE shall have reasonable cause to believe that it is being removed for other than reasonable cause, or for purposes likely to subvert or defeat the purposes for which the trusts hereof have been established, then under such circumstances, said Independent TRUSTEE may, but shall not be required to, petition any court of competent jurisdiction to resolve whether such reasonable cause exists and shall, if any such petition is filed with said court within the twenty (20) day period referred to in Section D below,

---

[5] Article Twelfth, Section B of the ROB Trust is a similar provision.

[6] Article Thirteenth, Section C(2) of the ROB Trust is a similar provision.  The Second Amendment of the ROB Trust amended this provision to also include "Successor Independent TRUSTEE" within the definition.

[7] Article Fourteenth of the ROB Trust contains similar provisions; however, the language excluding John L. Banfield was removed by the Fourth Amendment to the ROB Trust.

continue to act as such Independent TRUSTEE until said court shall enter its order(s) determining whether such removal is for "reasonable cause."

> D.  Upon the resignation or removal of an Independent TRUSTEE after GRANTOR'S death and after the death, declination, resignation, judicial removal or other unavailability of all individuals hereinabove designated to act as TRUSTEES, a majority of the beneficiaries of the trusts hereof who have at that time any vested interest in any trust herein established (excluding, however, said JOHN L. BANFIELD) shall appoint a successor Independent TRUSTEE within twenty (20) days after the effective date of such resignation or removal.  If a successor independent TRUSTEE is, for any reason, not selected within said twenty (20) day period, then the outgoing Independent TRUSTEE shall select its successor Independent TRUSTEE. . . .

* * *

> F.  Notwithstanding anything elsewhere herein to the contrary, after the death of GRANTOR, there shall be acting at all times, whether as sole TRUSTEE or as one of two or more CO-TRUSTEES, and Independent TRUSTEE.

Article Thirteenth of the Insurance Trust[8] provides:

> The Independent TRUSTEE agrees . . . to furnish quarterly statements to the primary beneficiary or beneficiaries receiving income hereunder . . . . The books of account of the Independent TRUSTEE shall, at all reasonable times, be open to the reasonable inspection of such beneficiaries and such other persons as they may designate for that purpose.

## A.  PETITIONS FOR ACCOUNTING AND REMOVAL OF TRUSTEES

Petitioners filed petitions for accounting and removal of the trustees related to both trusts. With regard to the Insurance Trust, petitioners alleged that respondent refused to acknowledge Gentry as independent cotrustee and unilaterally made decisions, despite objections by the remaining beneficiaries.  They further alleged that respondent had paid her attorney, Michael E. Tindall, over $80,000 in fees with no results to the trust.  Petitioners requested an accounting, removal of the trustees, and the appointment of a successor trustee based on respondent's breach of trust and the lack of cooperation among cotrustees under MCL 700.7706.

With regard to the ROB Trust, petitioners alleged that respondent hired and paid Tindall to file a frivolous counter-claim in an action by appellee First National Bank in Howell against the trust real estate, without approval of the other trustees.  Petitioners sought an accounting,

---

[8] Article Seventeenth of the ROB Trust is a similar provision.

-4-

removal of the trustees, and the appointment of a successor trustee based on the lack of cooperation and a substantial change in circumstances.

Respondent filed combined responses to the petitions and motions for summary disposition in each case. With regard to the Insurance Trust, respondent argued, *inter alia*, that (1) petitioners failed to perfect personal jurisdiction over qualified trust beneficiaries by listing them in the petition and serving them with the petition, (2) Gentry lacked standing to sue because she failed to disclose her interest in the trust in her federal bankruptcy petition, (3) the statutory provisions relied upon by petitioners were expressly superseded by the terms of the trust, and (4) accordingly, respondent was entitled to judgment as a matter of law.

At the hearing on the petitions, petitioners argued that respondent's actions were based on the advice of her attorney who was seeking to generate attorney fees. Respondent objected to the probate court appointing an independent trustee and argued that Gentry was not a cotrustee of the Insurance Trust because she resigned and was prohibited from serving as cotrustee by statute. Petitioners argued that the failure to serve all beneficiaries was a notice issue, not a jurisdictional issue, and Gentry did not resign. Tindall admitted that he had not provided his fee agreement or billings to the other beneficiaries. The probate court stated that it did not accept respondent's motion for summary disposition combined with the answer to the petition, but that respondent did not need to reformat her answer. Respondent, in her individual capacity, argued that it was improper for petitioners' attorney, John K. Harris, to represent both Day and Gentry. Petitioners' counsel suggested that the probate court appoint Schaller as the trustee.

The probate court found that there were issues of fact that required an evidentiary hearing. Nevertheless, on January 29, 2014, the court entered orders temporarily suspending the trustees, appointing Schaller as "Temporary Independent Trustee," requiring respondent to provide accountings and other information to petitioners within 21 days, and restraining and enjoining Tindall from filing any additional pleadings on behalf of either trust. The court noted that, because respondent was suspended as trustee, she no longer had authority to file pleadings in that fiduciary capacity. In response, respondent moved to strike the January 29, 2014 orders for lack of subject-matter jurisdiction. Petitioners replied that Tindall had no standing to file the motion and requested costs and fees against Tindall and respondent pursuant to MCL 600.2591 for filing a frivolous motion.

At a status conference on February 19, 2014, the probate court indicated that it did not intend for the temporary status of the appointed trustee to hinder the trustee's actions and amended the order to appoint Schaller as successor trustee pursuant to MCL 700.7901. On March 4, 2014, the probate court entered consent orders amending the January 29, 2014 orders to appoint Schaller as "Successor Trustee."

Thereafter, respondent filed a response to petitioners' request for sanctions and also moved for sanctions against petitioners' attorney under MCR 2.114 and to stay the proceedings pending appeal. Respondent argued that Harris failed to conduct good faith prefiling investigation, made false representations to the probate court, and failed to cite supporting legal authority.

At the April 2, 2014 hearing, the probate court found respondent's position regarding the January 29, 2014 orders "disingenuous at best," but nonetheless heard respondent's motions despite the prohibition on filings.[9] The probate court found that respondent's jurisdictional challenge was not properly supported by argument or fact and, in any event, lacked merit because the other 29 beneficiaries were unentitled to notice. However, because petitioners had sent notice to the other potential beneficiaries, the probate court ruled that it would allow them to appear and object. The probate court, however, stated that the order applied to those who had received notice. Respondent argued that jurisdictional defects could not be cured, but the probate court found that jurisdiction was proper. The probate court denied respondent's motion for relief and motion to strike the orders, set the matter for a hearing on the petitions, and denied respondent's motion to stay as premature. The probate court also ordered respondent to comply with the January 29, 2014 order or show cause why she should not be held in contempt and to turn over all trust assets to Schaller within five days or appear to show cause for her failure to so do. Over respondent's objection that doing so was unconstitutional, the probate court further amended its prior orders to indicate that respondent and her attorney on behalf of the trust were restrained from filing any pleading, motion, or document, explaining that respondent could still file pleadings if she had standing in her capacity as a beneficiary. Finally, the probate court indicated that it would allow petitioners to file a separate motion for sanctions that it would entertain at a later time.

On April 7, 2014, respondent filed claims of appeal with this Court related to both trusts. After this Court denied respondent's emergency motions to quash and consolidated the appeals, the Michigan Supreme Court denied respondent's application for leave to appeal prior to decision by this Court. This Court also denied respondent's motion for peremptory reversal.

On April 9, 2014, the probate court entered its order (1) requiring respondent to turn over all assets of the trusts within five days of April 2, 2014 (or appear for a show cause hearing), (2) restraining respondent and any representative or attorney on her behalf from filing pleadings, documents, or motions on her behalf as former trustee, (3) adjourning the hearing on the petitions to April 23, 2014, for purposes of providing notice to other beneficiaries, and (4) denying respondent's motion for relief, to strike orders, and to stay proceedings.

## B. ATTORNEY FEES

Petitioners subsequently filed a petition for attorney fees pursuant to MCL 700.7904. In response, respondent argued that (1) Harris was not authorized to act on behalf of Schaller, (2) Harris was only retained by two of the four petitioners, (3) Harris's retainer agreement, which retained him to represent both Day and Gentry, involved a non-waivable conflict of interest under Michigan Rule of Professional Conduct (MRPC) 1.7, and (4) the fees requested were not reasonable. Respondent also argued that Harris was not entitled to fees under MCL 700.7904 because he did not establish that he provided a benefit to the estate.

---

[9] The probate court noted that respondent had also filed a motion for superintending control and to disqualify the judge.

-6-

The probate court set the matter for an evidentiary hearing, and, at the evidentiary hearing, Harris argued, with regard to the alleged conflict of interest, that petitioners' interests were united on the issues presented in the petition. Respondent did not dispute Harris's hourly rate of $225 an hour or the rates associated with the other attorneys in Harris's firm, but disputed whether the work performed was reasonable.

The probate court found no conflict of interest because Day, Gentry, and the other two petitioners all wanted respondent removed and, thus, their interests were aligned. The probate court also found that petitioners enhanced, preserved, and protected the trust property based on facts that the parties agreed upon and that supported the removal of the trustees and appointment of a successor trustee. The probate court found that respondent did not keep the qualified trust beneficiaries reasonably informed about the administration of the trust or provide accountings, that there was a lack of cooperation among the cotrustees, and that the appointment of an independent successor trustee best served the purpose of the trusts. Over respondent's objection, the probate court admitted Harris's billing statements. After respondent was given the opportunity to cross-examine Harris, the probate court indicated that it would review the billing statements with regard to the reasonableness of the time spent and issue a written opinion. Respondent objected to the procedures and argued that Harris was required to present evidence on the record regarding each of the reasonableness factors. The probate court stated it could review the work done on each date in the billing statements. Harris noted that Tindall was given an opportunity to question him about specific entries but failed to do so.

On October 24, 2014, the probate court entered an order granting petitioners' request for attorney fees. The probate court ruled that the removal of all trustees and the appointment of an independent successor trustee preserved and protected trust property because trust assets were being wasted or dissipated by the conflicting interests and respondent's breach of fiduciary duty in unilaterally spending $87,000 for an attorney fee retainer. With regard to the reasonableness of the fees, the probate court found that respondent did not object to the hourly rate and did not raise any specific objections to the amount requested. Based on the number of filings and hearings, the probate court found that 101 hours of work by three attorneys was reasonable. The probate court awarded attorney fees and costs in the amount requested of $20,834.25.

In response, respondent filed a motion for judgment notwithstanding the verdict (JNOV). She argued that the probate court failed to apply the relevant principles of law and that she was not required to prove anything because the burden was on Harris as the fee applicant. Respondent further argued that the probate court failed to make specific findings of fact and conclusions of law and failed to analyze the relevant factors. Respondent claimed that the billing statements alone were insufficient to establish a prima facie case for attorney fees. Petitioners responded that respondent failed to cross-examine Harris on any of the time entries and that the probate court was not required to recite each factor, and petitioners again requested sanctions against Tindall for filing a frivolous motion.

The probate court found that, generally, it must make specific findings regarding each factor, but respondent failed to present any countervailing evidence or contest the hours billed. Accordingly, it found that there were no factual findings to make because there were no factual issues raised by respondent. Nonetheless, the court proceeded to address the factors, stating: (1) respondent stipulated to the hourly rate and (2) 101 hours multiplied by $225 an hour was

actually more than the amount awarded. Regarding the other factors, the probate court stated that Harris's professional standing and experience was stipulated to and that it had applied the factors in its written opinion. Regarding the skill, time, and labor involved, the probate court stated that "this case was very labor intensive," based on the "sheer number of filings," of which the probate court took judicial notice. The probate court found that it had addressed the results achieved in the written opinion by determining that petitioners protected trust assets. Regarding the difficulty of the case, the probate court found that the amount of litigation made this case "more time consuming, more difficult, and more expensive." The probate court further stated that it found the expenses incurred "appropriate and reasonable considering the time spent and the amount of litigation." The probate court stated that it was supplementing its written opinion, found that petitioners met their burden, and the fees, rate, and hours were reasonable. Accordingly, the probate court denied respondent's motion for JNOV.

## II. PRESERVATION AND STANDARDS OF REVIEW

"Generally, an issue is not properly preserved if it is not raised before, and addressed and decided by, the trial court." *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). This Court is not required to address an unpreserved issue, but "it may overlook preservation requirements when the failure to consider an issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 387; 803 NW2d 698 (2010). Respondent's claim on appeal regarding sanctions is unpreserved because the probate court never ruled on respondent's request for sanctions. Respondent's other issues are preserved, although she raises some arguments that were not raised below.

Whether the probate court had subject-matter jurisdiction over a claim is a question of law that this Court reviews de novo. See *Harris v Vernier*, 242 Mich App 306, 309; 617 NW2d 764 (2000). "A probate court's decision whether to remove a trustee is reviewed for an abuse of discretion." *In re Duane v Baldwin Trust*, 274 Mich App 387, 396; 733 NW2d 419 (2007), aff'd 480 Mich 915 (2007).[10] "The trial court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). We review de novo the interpretation of statutes and court rules, the proper interpretation of trusts, and constitutional issues. *In re Estate of Stan*, 301 Mich App 435, 442; 839 NW2d 498 (2013); *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 685; 891 NW2d 28 (2011). However, "appeals from a probate court decision are on the record, not de novo." *Temple Marital Trust*, 278 Mich App at 128; see also MCL 600.866(1). We review for an abuse of discretion a ruling on a request for sanctions under MCR 2.114 and its underlying factual findings for clear error. *Sprenger v Bickle*, 307 Mich App 411, 422; 861 NW2d 52 (2014). With regard to attorney fees, we review a decision to award attorney fees and a determination of the reasonableness of the fees for an abuse of discretion, underlying findings

---

[10] The Michigan Supreme Court affirmed the judgment, but rejected the majority's reasoning to the extent that it was inconsistent with the partial dissent.

of fact for clear error, and questions of law de novo. *Temple Marital Trust*, 278 Mich App at 128.

## III. SUBJECT-MATTER JURISDICTION

Respondent first contends that the probate court lacked subject-matter jurisdiction over this case. We disagree.

"Jurisdiction of the subject matter is the right of the court to exercise judicial power over a class of cases, not the particular case before it; to exercise the abstract power to try a case of the kind or character of the one pending." *Altman v Nelson*, 197 Mich App 467, 472; 495 NW2d 826 (1992). It "does not depend on the truth or falsity of the charge, but upon its nature: it is determinable on the commencement, not at the conclusion, of the inquiry." *Id*.

MCL 700.7203(a) provides that the probate court "has exclusive jurisdiction of proceedings in this state brought by a trustee or beneficiary that concern the administration of a trust as provided in section 1302(b) and (d)." MCL 700.1302(b) provides that the probate court has exclusive jurisdiction of:

> A proceeding that concerns the validity, internal affairs, or settlement of a trust; the administration, distribution, modification, reformation, or termination of a trust; or the declaration of rights that involve a trust, trustee, or trust beneficiary, including, but not limited to, proceedings to do all of the following:
>
> (*i*) Appoint or remove a trustee.
>
> (*ii*) Review the fees of a trustee.
>
> (*iii*) Require, hear, and settle interim or final accounts.
>
> (*iv*) Ascertain beneficiaries.
>
> (*v*) Determine a question that arises in the administration or distribution of a trust, including a question of construction of a will or trust.
>
> (*vi*) Instruct a trustee and determine relative to a trustee the existence or nonexistence of an immunity, power, privilege, duty, or right.
>
> (*vii*) Release registration of a trust.
>
> (*viii*) Determine an action or proceeding that involves settlement of an irrevocable trust.

Based on these provisions, the probate court had jurisdiction over these proceedings, which were brought by trustees and beneficiaries, concerned the administration and internal affairs of the trusts, sought to remove the trustees and appoint a successor trustee, and sought accountings.

Respondent, however, argues that petitioners' failure to comply with statutory notice requirements deprived the probate court of subject-matter jurisdiction. The pertinent provision, MCL 700.7208, which relates to the initiation of a proceeding under MCL 700.7203, provides:

A proceeding under [MCL 700.7203] is initiated by filing a petition in the court and giving notice to interested persons as provided in [MCL 700.1401]. The court may order notification of additional persons. A judgment or order binds each person who is given notice of the proceeding even if not all interested persons are notified.

MCL 700.1401(1) provides that "the petitioner shall cause notice of the time and place of the hearing on the petition to be given to each interested person or the person's attorney if the person has appeared by attorney or requested that notice be sent to the person's attorney." Under MCR 5.125(C)(33)(d), "persons interested in a proceeding affecting a trust" include "the proposed trustee." Moreover, the court rule regarding the contents of petitions requires that they "include a current list of interested persons, indicate the existence and form of incapacity of any of them, the mailing addresses of the persons or their representatives, the nature of representation and the need, if any, for special representation." MCR 5.113(B)(1)(e). MCR 5.118(A) allows a person who has filed a paper that is subject to a hearing to amend or supplement the paper.

Even assuming that petitioners failed to provide notice to all interested persons, this failure did not deprive the probate court of subject-matter jurisdiction. Under MCL 700.7208, even if notice is not provided to all interested persons, the judgment or order is still binding on each person who was provided notice. That provision does not indicate that the failure to provide notice deprives the probate court of jurisdiction; rather, it instructs that the probate court may order notification of additional persons. In this case, petitioners subsequently provided notice to additional beneficiaries. Schaller must have also received notice because he was present at the subsequent hearings. Moreover, petitioners did not propose Schaller as a trustee in their petitions. Rather, Harris suggested him as a successor trustee at the hearing, stating "Appoint Dale Schaller. Appoint whoever this Court wants." And, respondent fails to cite any statutory provision that required the petitioners to propose a trustee.

Respondent cites *In re Mayfield*, 198 Mich App 226, 231; 497 NW2d 578 (1993), citing *In re Brown*, 149 Mich App 529, 540-542; 497 NW2d 578 (1986), in which this Court stated that "[a]lthough a failure to follow the court rules regarding notice requirements would not establish a jurisdictional defect, failure to provide the applicable statutory notice would." However, both *Mayfield* and *Brown* involved actions to terminate parental rights and the jurisdiction of the probate court over termination proceedings. Thus, those cases are inapplicable to the present case.

Here, the failure to list all interested persons in the petition did not deprive the probate court of subject-matter jurisdiction to hear and decide this matter, particularly given that MCR 5.118(1) allows petitions to be amended. Although it does not appear that the petitions were in fact amended, respondent was aware of the other interested persons.

Finally, petitioners' alleged failure to inform the probate court that Schaller was not qualified would not deprive the probate court of subject-matter jurisdiction because subject-

matter jurisdiction "does not depend on the truth or falsity of the charge." *Altman*, 197 Mich App at 472. Moreover, even if Schaller was not qualified to act as an independent trustee (we analyze the issue further *infra*), his lack of qualification would not impact the probate court's ability to take other action, including removing the trustees.

## IV. REMOVAL OF TRUSTEES

Next, respondent argues that the probate court failed to follow the law and violated her due process rights by removing the trustees and substituting its judgment for that of the trustees regarding "discretionary decisions." We disagree.

In support of their petition for removal, petitioners relied on MCL 700.7706, which provides:

> (1) The settlor, a cotrustee, or a qualified trust beneficiary may request the court to remove a trustee, or a trustee may be removed by the court on its own initiative.

> (2) The court may remove a trustee if 1 or more of the following occur:

> (a) The trustee commits a serious breach of trust.

> (b) Lack of cooperation among cotrustees substantially impairs the administration of the trust.

> (c) Because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the purposes of the trust.

> (d) There has been a substantial change of circumstances, the court finds that removal of the trustee best serves the interests of the trust beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable cotrustee or successor trustee is available.

> (3) Pending a final decision on a request to remove a trustee, or in lieu of or in addition to removing a trustee, to the extent it is not inconsistent with a material purpose of the trust, the court may order any appropriate relief under [MCL 700.7901(2)] that is necessary to protect the trust property or the interests of the trust beneficiaries.

MCL 700.7901(2) provides that, in order to remedy a breach of trust that has occurred or may occur, the probate court may, among other things, "[a]ppoint a special fiduciary to take possession of the trust property and administer the trust," "[s]uspend the trustee," or "[r]emove the trustee as provided in [MCL 700.7706]." MCL 700.7901(2), (e), (f), and (g).

Respondent, however, relies on MCL 700.7105(2), which provides that "[t]he terms of a trust prevail over any provision of this article except the following. . . ." Respondent also correctly notes that MCL 700.7706, regarding removal, is not one of the listed exceptions to MCL 700.7105(2).[11] The trusts provide specific procedures for removal of trustees, which provide that the majority of the beneficiaries with a vested interest in the trust may remove the trustee for reasonable cause and the trustee may file a petition to challenge the reasonable cause. These procedures for removal were not followed in this case. Instead, four of the grantor's children petitioned the probate court to remove the trustees.

Nonetheless, Article Tenth of the Insurance Trust and Article Fourteenth of the ROB Trust also expressly refer to "judicial removal" of the trustees. These references can be fairly interpreted as permitting removal of a trustee by a court commensurate with the applicable law and statutes. Thus, the terms of the trust are not inconsistent with the probate court removing a trustee under MCL 700.7706. MCL 700.7706(2)(b) allows for removal based on a lack of cooperation among cotrustees that substantially impairs the administration of the trust, which clearly existed in this case. Contrary to respondent's assertion, it was not necessary for the probate court to also find a breach of fiduciary duty by the trustee in order to warrant removal. Although the trusts confer sole discretionary authority to the trustees, a determination of lack of cooperation among cotrustees warranting judicial removal does not involve any consideration of whether the trustee was acting within his or her discretion. Accordingly, the probate court did not abuse its discretion by removing the trustees. See *Duane*, 274 Mich App at 396.

To the extent respondent's reference to "discretionary decisions" also refers to the probate court's order for an accounting, the trusts require accountings, and the power to order the trustee to provide statements of account is also one of the exceptions under MCL 700.7105(2). See MCL 700.7105(2)(j). Accordingly, the probate court followed the applicable law and respondent's due process arguments fail.

## V. REFUSAL TO ACCEPT FILINGS AND CONSIDER DOCUMENTS AND PAPERS

Respondent contends that the probate court violated her due process rights by refusing to accept her combined answer and motion for summary disposition, and by refusing to consider all documents and papers filed when deciding the jurisdictional challenge. We disagree.

Respondent quotes the transcript of the January 8, 2014 hearing, at which the probate court stated: "Well the Court doesn't accept the motion combined with the response." However, it is evident that the probate court accepted the answer and it specifically told Tindall that he did not "need to reformat the answer." To the extent the probate court refused to accept respondent's motion, respondent does not articulate how this was error or how this constituted a violation of due process.

---

[11] Petitioners are correct that MCL 700.7801, which requires the trustee to administer the trust in good faith, does prevail over the terms of a trust. See MCL 700.7105(2)(b). This provision means that the trustee must act in good faith, regardless of the terms of the trust. It does not, however, affect the specific provisions of the trusts regarding removal.

Respondent also quotes the transcript of the April 2, 2014 hearing and argues that the probate court refused to accept and read her filings, affidavits, and exhibits in support of her motion for relief, and also failed to read her responses, replies, or the cases cited. However, the probate court clearly read respondent's motion and brief, as it stated: "Where I take issue with your petition is your motion [sic] is that you make blanket legal assertions and . . . you fail to address the specifics of how notice is improper." The probate court later stated, "Your motion and brief didn't address this." Respondent, however, argued below that her motion and brief incorporated the motions filed on behalf of the trusts, the affidavits in support of those motions, and the exhibits attached. The probate court, however, ruled, based on the statutes and caselaw, that it had jurisdiction over the proceedings. The probate court further found that Tindall's motion and brief lacked legal and factual support and stated, "You want this Court to piece together your position by way of reading through all your other motions and . . . responses." It also stated, "This Court isn't going to jump around through the file and piece together what your position is from all your different filings." Respondent again fails to articulate how this was error or how this constituted a violation of due process. Moreover, in her argument heading, respondent specifically refers to the probate court's failure to consider all papers and documents in deciding the "jurisdictional challenge." Since, as discussed *supra*, respondent's jurisdictional challenge lacked merit, any error in the trial court's refusal to consider that challenge was harmless.

## VI. APPOINTMENT OF SUCCESSOR TRUSTEE

Respondent argues that Schaller was improperly appointed as the successor trustee under the terms of the trusts. We agree.

Petitioners admit that Schaller did not qualify as an "Independent Trustee" under the terms of the trust, but they argue that the probate court had the authority appoint him pursuant to statute and court rule. In appointing Schaller as the successor trustee, the probate court cited MCL 700.7901. MCL 700.7706(3) allows the probate court, in addition to removing the trustee, and "to the extent it is not inconsistent with a material purpose of the trust," to order relief under MCL 700.7901(2) "that is necessary to protect the trust property or the interests of the trust beneficiaries." MCL 700.7901(2)(e) allows for the appointment of "a special fiduciary to take possession of the trust property and administer the trust."

The probate court appointed Schaller as "Successor Trustee," not as a "special fiduciary." However, the probate court did refer to MCL 700.7901 and, to the extent this provision applied, we conclude that the appointment of Schaller was improper because it was inconsistent with a material purpose of the trusts. See MCL 700.7706(3). The trusts expressly require an "Independent Trustee" at all times and also expressly define "Independent Trustee." Schaller was not an "Independent Trustee" under the definition provided in the trusts. Accordingly, the probate court's appointment of Schaller was inconsistent with a material purpose of the trusts.

Moreover, MCL 700.7704(3) provides that "a vacancy in a trusteeship of a noncharitable trust . . . shall be filled in the following order of priority:"

(a) In the manner designated by the terms of the trust,

-13-

(b) By a person appointed by the court.

Under the Article Tenth of the Insurance Trust and Article Fourteenth of the ROB Trust, the majority of the beneficiaries of the trusts who have a vested interest shall appoint a successor independent trustee within 20 days of the removal and if a successor independent trustee is not selected within the 20-day period, then the outgoing independent trustee shall select its successor independent trustee. These provisions prevail over the appointment by the probate court.

Petitioners contend that the probate court had authority to appoint Schaller under MCR 5.501(D), which provides:

> **Appointment of Trustee not Named in Creating Document.** An interested person may petition the court for appointment of a trustee when there is a vacancy in a trusteeship. The court may issue an order appointing as trustee the person nominated in the petition or another person. The order must state whether the trustee must file a bond or execute an acceptance.

However, the probate court did not cite this court rule. And the rule does not, in any event, expressly give the probate court authority to appoint any person as trustee, even if the appointment is inconsistent with the terms of the trust. Based on MCL 700.7704(3), the terms of the trust prevail in filling the vacancy caused by the judicial removal. Under the terms of the trusts, because the beneficiaries failed to appoint a successor independent trustee within 20 days of removal,[12] the outgoing trustee (respondent) must select the successor independent trustee. Accordingly, we remand for the probate court to enter an order appointing a successor independent trustee in accordance with the provisions of the trusts.[13]

## VII. CONSTITUTIONALITY OF ORDERS

Respondent contends that the probate court's "pre-filing" orders violated the United States and Michigan Constitutions. We disagree.

First, it is unclear what respondent means by "pre-filing" orders. To the extent respondent is referring to the restraint on filing by or on behalf of the former trustee, respondent

---

[12] Although Harris nominated Schaller, he did not represent a majority of the beneficiaries. Even if his nomination was considered to be a selection by a majority of the beneficiaries, they did not select an "Independent Trustee" within the 20-day period because Schaller did not meet the requirements of an "Independent Trustee."

[13] In making this determination, we direct the probate court's attention to the Fifth Amendment to the ROB Trust, which amended Article Eighth, Section A.2 to provide: "If all of GRANTOR'S daughters shall die, resign, decline or otherwise for any reason be or become unavailable to act as Independent TRUSTEES, then FIRST NATIONAL BANK IN HOWELL shall act as sole Independent TRUSTEE." Although this provision was not cited by either party, the probate court should consider it and any other provision that may apply with regard to the appointment of a successor trustee.

-14-

fails to show how this restraint was improper. As the probate court explained, because respondent was no longer the trustee, she could not file documents as the trustee, and the probate court's intent was to preserve the trust assets. The probate court noted that respondent could still file documents in her capacity as a beneficiary. To the extent respondent claims that the probate court's amendment of the order regarding the restraint was improper because it was made after the claim of appeal was filed, the probate court first indicated that respondent could no longer file pleadings at the January 8, 2014 hearing. However, the January 29, 2014 order specifically prohibited Tindall from filing pleadings, so at the April 2, 2014 hearing, the probate court amended the language to prohibit respondent or any attorney on her behalf as trustee from filing documents, motions, or pleadings. It is true that the order containing that amendment was not entered until April 9, 2014, *after* the claims of appeal were filed. However, even if this was improper, respondent fails to explain how she was harmed by the restraint because the probate court still heard her arguments.

With regard to the amendment of the January 29, 2014 order from temporarily suspending the trustee to appointing Schaller as the successor trustee, the order making that amendment was entered on March 4, 2014, before respondent's claim of appeal was filed. Moreover, that order and, thus, respondent's removal occurred before she was ordered to turn over assets on April 2, 2014. To the extent respondent takes issue with the civil contempt proceedings, the probate court never imposed damages for civil contempt.

Finally, to the extent respondent claims there was no basis for her removal, the probate court's decision to remove her was not an abuse of discretion for the reasons discussed above.

## VIII. SANCTIONS

Respondent contends that the probate court erred by refusing to award sanctions. Although respondent filed a motion for sanctions in combination with her motion to stay proceedings, the probate court never addressed the request for sanctions against Harris. Given that this is not a question of law, there would be no manifest injustice in failing to consider this issue, and this issue is not necessary for a proper determination of the case, we decline to consider this unpreserved issue. See *Gen Motors Corp*, 290 Mich App at 387.

## IX. ATTORNEY FEES

In Docket Nos. 325422 and 325423, respondent contends that the probate court improperly awarded attorney fees. We conclude that the decision to award fees was proper, but we remand for rehearing and redetermination of the amount of fees.

## A. JURISDICTION AND STANDING

Respondent first contends that the probate court lacked subject-matter to award attorney fees payable from the trust. As discussed above, the probate court had subject-matter jurisdiction over this case. Accordingly, respondent's claim that the award of attorney fees was improper on this basis lacks merit.

With regard respondent's claim that Gentry lacked standing, petitioners correctly noted that the petitions were signed by Day and there is no claim that Day lacked standing.

-15-

Accordingly, even if Gentry did not have standing, this would not affect Day's ability to file the petitions or the probate court's decisions.

With regard to respondent's claim that Harris lacked standing, respondent did not raise this argument below and respondent incorrectly argues that the case she cites stands for the proposition that an attorney has no standing to seek payment of attorney fees from a trust. Rather, in the case she cites, the Court concluded that a law firm did not have standing to appeal. See *In re Freeman*, 218 Mich App 151, 155; 553 NW2d 664 (1996), abrogated in part by *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286; 715 NW2d 846 (2006). Moreover, petitioners contend that they filed the petition for attorney fees through Harris. This is supported by the probate court's order, which indicates that it was "Petitioners' Request for Attorney Fees and Costs."

B. FEE AGREEMENT

Respondent also challenges the validity of Harris's fee agreement, arguing that it is void because it violates MRPC 1.7, which provides:

> **(a)** A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>
> (2) each client consents after consultation.
>
> **(b)** A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Respondent claims that Harris could not represent both Day and Gentry because they were opposing parties in the related, pending litigation. Respondent is referring to the bankruptcy litigation, in which she claims that Gentry is in conflict with all of the other beneficiaries. The probate court found no conflict of interest because Day, Gentry, and the other two petitioners all wanted respondent removed and, thus, their interests were the same. However, even assuming that there was direct adversity in the representation of Day and Gentry, Harris was permitted to represent them both if he reasonably believed that the representation of one would not adversely affect the relationship with the other, and each client consented after consultation. See MRPC 1.7(a)(1) and (2). Given that petitioners' interests were aligned in seeking removal of the trustees and an accounting, Harris could reasonably believe that his representation of either Day or Gentry would not adversely affect his relationship with the other. Moreover, although there is

no direct evidence that Harris consulted with Day or Gentry, they both signed the Retainer Agreement. Thus, contrary to respondent's assertion, the alleged conflict was waivable.

## C. MCL 700.7904

Next, respondent contends that Harris was not entitled to an award of fees and costs under MCL 700.7904, which provides:

(1) In a proceeding involving the administration of a trust, the court, as justice and equity require, may award costs and expenses, including reasonable attorney fees, to any party who enhances, preserves, or protects trust property, to be paid from the trust that is the subject of the proceeding.

(2) Subject to subsection (3), if a trustee participates in a civil action or proceeding in good faith, whether successful or not, the trustee is entitled to receive from trust property all expenses and disbursements including reasonable attorney fees that the trustee incurs in connection with its participation.

(3) A court may reduce or deny a trustee's claim for compensation, expenses, or disbursements with respect to a breach of trust.

Respondent's claim that the proceedings below did not involve the administration of a trust is without merit. The proceedings involved petitions to remove trustees and seeking an accounting. Respondent fails to explain how proceedings related to removal of a trustee and accountings do not involve the administration of a trust. Instead, respondent argues that there was no order for supervised administration of the trusts. Respondent cites MCL 700.7201(2) regarding "continuing judicial supervision" and MCR 5.501(B) regarding "continued supervisory proceedings." However, those provisions are irrelevant to whether this case involved "the administration of a trust."

With regard to whether petitioners enhanced, preserved, or protected trust property, the probate court ruled that the removal of all trustees and the appointment of an independent successor trustee preserved and protected trust property because trust assets were being wasted or dissipated by the conflicting interests and respondent's breach of fiduciary duty in unilaterally spending $87,000 for an attorney fee retainer. At the hearing, the probate court provided additional reasons, including respondent's failure to keep the qualified trust beneficiaries reasonably informed about the administration of the trust, to provide accountings, and the lack of cooperation among the cotrustees. The probate court found that the appointment of an independent successor trustee best served the purpose of the trusts. The probate court's finding that petitioners enhanced, preserved, and protected trust property was not clearly erroneous given the lack of cooperation among cotrustees. See *Temple Marital Trust*, 278 Mich App at 128. And, even though Schaller was not properly appointed as a successor Independent Trustee, the award of attorney fees was proper because petitioners enhanced, preserved, and protected trust property by obtaining the removal of respondent as trustee and the appointment of a successor trustee in general, as well as by their efforts to obtain compliance with the probate court's orders.

D. REASONABLENESS OF FEES

Finally, respondent contends that Harris did not prove the reasonableness of his fees. MCL 700.7904(1) permits the recovery of reasonable attorney fees. In determining the reasonableness of an attorney fee:

> a trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services, i.e., factor 3 under MRPC 1.5(a). In determining this number, the court should use reliable surveys or other credible evidence of the legal market. This number should be multiplied by the reasonable number of hours expended in the case (factor 1 under MRPC 1.5[a] and factor 2 under *Wood* [*v Detroit Automobile Inter-Ins Exch*, 413 Mich 573; 321 NW2d 653 (1982)]). The number produced by this calculation should serve as the starting point for calculating a reasonable attorney fee. We believe that having the trial court consider these two factors first will lead to greater consistency in awards. Thereafter, the court should consider the remaining *Wood*/MRPC factors to determine whether an up or down adjustment is appropriate. And, in order to aid appellate review, a trial court should briefly discuss its view of the remaining factors. [*Smith v Khouri*, 481 Mich 519, 530-531; 751 NW2d 472 (2008) (opinion by TAYLOR, C.J.).]

With regard to determining the reasonable number of hours expended by each attorney,

> [t]he fee applicant must submit detailed billing records, which the court must examine and opposing parties may contest for reasonableness. The fee applicant bears the burden of supporting its claimed hours with evidentiary support. If a factual dispute exists over the reasonableness of the hours billed or hourly rate claimed by the fee applicant, the party opposing the fee request is entitled to an evidentiary hearing to challenge the applicant's evidence and to present any countervailing evidence. [*Id*. at 532.]

"When requested attorney fees are contested, it is incumbent on the trial court to conduct a hearing to determine what services were actually rendered, and the reasonableness of those services." *Reed v Reed*, 265 Mich App 131, 166; 693 NW2d 825 (2005). This Court has stated that "[a]n itemized bill of costs by itself is insufficient to establish the reasonableness of the hours claimed." *Adair v Michigan*, 298 Mich App 383, 392; 827 NW2d 740 (2012), rev'd in part on other grounds 494 Mich 852 (2013).

In this case, Tindall stipulated to the hourly rates of Harris and the other attorneys in his firm. With regard to the reasonable number of hours spent, petitioners merely submitted Harris's billing statements, which included a description of services rendered. Although an itemized bill of costs is insufficient to establish the reasonableness, the fact that respondent was given an opportunity to cross-examine Harris regarding the entries and failed to do so might have been sufficient to establish reasonableness in this case. Nonetheless, we remand for the probate court to reconsider the reasonable number of hours spent in light of our ruling that Schaller was not properly appointed as a successor trustee. Respondent objected to the appointment of Schaller and our conclusion that her argument on that issue was meritorious could affect the

-18-

determination of the reasonable number of hours spent.  On remand, we order the probate court to also reconsider the other *Wood*/MRPC factors in light of this Court's conclusion that the appointment of Schaller was improper, keeping in mind that its analysis is intended to "aid appellate review." *Smith*, 481 Mich at 531.  See also *Augustine v Allstate Ins Co*, 292 Mich App 408, 436; 807 NW2d 77 (2011).

In Docket Nos. 321204 and 321206, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.  In Docket Nos. 325422 and 325423, we vacate the award of attorney fees and remand for rehearing and redetermination of the amount.  We do not retain jurisdiction.  Neither party having prevailed in full, no costs may be taxed under MCR 7.219.


/s/ Henry William Saad
/s/ Kurtis T. Wilder
/s/ Christopher M. Murray