*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* S. K. CLARKE, Minor.

UNPUBLISHED
April 13, 2023

No. 363582
Montcalm Circuit Court
Family Division
LC No. 2021-001002-NA

Before: SHAPIRO, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to her minor child. On appeal, respondent contends that the trial court clearly erred in terminating her parental rights because the court failed to consider guardianship options and concluded that reasonable efforts to reunify were no longer necessary. In addition, respondent argues that the trial court erred when it applied MCL 712A.19b(3)(c), (g), and (j) to terminate her parental rights based upon insufficient evidence and ultimately failed to consider the child's best interests. We affirm.

## I. FACTUAL BACKGROUND

To properly understand this case, it is important to set the stage. Although this case appears to begin in July 2019 when the Department of Health and Human Services (DHHS) removed SKC from respondent, this family's interactions with the DHHS began almost a decade earlier. In fact, respondent testified during the course of this case that she had released the rights to her previous four children in different proceedings dating back to 2008. In 2008, the oldest child was removed due to ongoing domestic-violence issues, and respondent's parental rights were released in 2015. Subsequently, in March 2019, respondent released her parental rights to her next three children, who were removed based upon respondent's abuse of methamphetamine. In each case of removal, respondent was ordered to participate in services such as substance-abuse counseling and mental-health counseling and to find employment. Respondent was unable to participate in services and, ultimately, all of her rights were relinquished.

In July 2019, SKC was born with THC in his system, which prompted the DHHS to file a petition for removal based upon respondent's substance-abuse history. SKC was placed with his biological father, but the father was found using methamphetamine only two days after SKC was placed with him. A petition for removal was issued against father, and SKC was placed in foster

-1-

care.[1] By August 2019, SKC was returned to respondent after she began participating in services prescribed in the case-service plan. The case was initially closed in December 2019 for continued participation in services and completion of a substance-abuse treatment plan. But respondent was subsequently stopped by the police, who found SKC and drugs in the car. Respondent stated that the drugs belonged to her friend, who was a passenger in the car, and insisted that she was sober.

By March 2021, Children's Protective Services received a complaint of alleged abuse and neglect based upon respondent's use of methamphetamine and temporarily removed SKC from respondent's care. Initially, respondent said that she only used methamphetamine when SKC was not in her care, but she refused to take a drug test, so the DHHS then temporarily placed SKC with his paternal grandparents. After SKC was removed from respondent's care, respondent relapsed twice. Respondent attributed relapsing to the feeling that the time not spent caring for SKC was unhealthy for her. The DHHS again developed a case-service plan and provided services to reunify respondent with SKC. The DHHS identified several barriers to reunification: parenting skills; lack of housing; mental-health issues; domestic violence; lack of employment; and substance abuse.

Respondent's participation in, and success with, services fluctuated throughout this case. At the time of the adjudication hearing, respondent was living with a friend, and her only source of income was unemployment benefits. Respondent completed both a substance-abuse evaluation and a mental-health assessment. The trial court determined that it had jurisdiction over SKC and ordered that reasonable efforts toward reunification continue. The trial court also noted that it still had concerns about the safety of SKC and that it was in SKC's best interests to remain in the care of his grandparents. Respondent was afforded supervised parenting time for two hours per week.

In August 2021, the trial court held a dispositional hearing at which it acknowledged that respondent was complying with the case-service plan except for drug screenings and finding adequate housing. Because the trial court could not verify respondent's sobriety, placement with SKC's grandparents continued. At respondent's request, her supervised parenting time with SKC was increased to five hours per week.

By the time a review hearing took place in September of 2021, respondent had completed a psychological evaluation and was 12 weeks into a parenting-education program. Unfortunately, several of respondent's drug screens from August and September 2021 revealed that respondent was still using methamphetamine. Furthermore, respondent had been unable to find or maintain housing and had not secured employment. The DHHS opined that respondent was not benefiting from services, but she had made progress toward alleviating barriers to reunification. Therefore, reasonable efforts aimed at reunification continued. By December 2021, respondent was attending weekly parenting visits with SKC, but respondent was frequently late for the visits. The trial court modified the case-service plan to better reflect the recommendations of a psychological evaluation and further required participation in substance-abuse treatment services and counseling.

In March 2022, the trial court conducted a permanency planning hearing and prohibited the DHHS from initiating termination proceedings to allow respondent more time to comply with

---

[1] Proceedings in that case showed that father was unwilling to participate in services, so the court terminated father's parental rights to SKC in June 2021.

the case-service plan. In the months leading up to that hearing, respondent had sporadic positive drug screens, but she was clean for the six weeks immediately preceding the hearing. Moreover, respondent had secured part-time employment and had found appropriate housing with her current boyfriend. The trial court ordered respondent to sign a release that would permit the DHHS access to respondent's counseling records.

At the next hearing in June 2022, respondent had facial bruising when she reported for her monthly check-in with the foster-care worker. Respondent initially stated that the bruising around her eye was from a skiing accident, but she eventually admitted that her boyfriend had engaged in domestic violence against her. The DHHS was not sure if respondent had ended that relationship, but noted that respondent had moved into a recovery home where she was receiving treatment. Respondent alleged that she was working at a convenience store, but the trial court did not find that claim credible. Additionally, the trial court found that respondent had not been complying with the case-service plan, so the trial court ordered the DHHS to initiate termination proceedings for failure to show progress. At that time, the trial court found that it was in SKC's best interests to remain with his grandparents with all parenting time for respondent suspended.

In July 2022, the DHHS filed a supplemental petition to terminate respondent's parental rights to SKC. In October 2022, the trial court found statutory grounds for termination and that termination was in the child's best interests. The trial court concluded that, throughout this case, reasonable efforts to reunify the family had been unsuccessful and respondent never demonstrated the ability to properly care for SKC. This appeal followed.

## II. LEGAL ANALYSIS

On appeal, respondent challenges several aspects of the trial-court proceedings. First, she argues that the trial court plainly erred by failing to consider guardianship in lieu of termination of parental rights. Next, respondent contends that the trial court clearly erred by determining that the DHHS was no longer required to make reasonable efforts at reunification before the termination hearing began. In addition, respondent asserts that the trial court erred when it found by clear and convincing evidence that statutory grounds for termination existed. Finally, respondent insists that the trial court erred when it found that termination was in SKC's best interests. We shall address each of these issues in turn.

## A. GUARDIANSHIP

Respondent first argues that the trial court plainly erred by failing to consider guardianship in lieu of termination of parental rights. Specifically, she states that guardianship was appropriate because SKC was placed with relatives, i.e., the child's grandparents. We disagree. A trial court's determination whether to grant a guardianship is reviewed for an abuse of discretion. See *In re Guardianship of Redd*, 321 Mich App 398, 403; 909 NW2d 289 (2017). An abuse of discretion occurs when the trial court chooses an outcome outside the range of reasonable and principled outcomes. *Id.*

A guardianship may only be considered when a child cannot be returned to a parent, but termination is "clearly not in the child's best interests." *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). Moreover, under MCL 722.873(c), a "child is eligible to receive guardianship

assistance" only when "[r]eunification and placing the child for adoption are not appropriate permanency options." While respondent contends that guardianship was appropriate because the child was placed with relatives, the issue of guardianship was not brought up before the trial court and is, therefore, unpreserved. Also, the trial court found that termination of respondent's parental rights was in SKC's best interests. Accordingly, respondent's argument that the trial court should have considered guardianship, rather than termination of parental rights, lacks merit.

## B. REASONABLE EFFORTS

Respondent next contends that the trial court erred in finding that reasonable efforts were no longer necessary and ordering that parenting time be suspended. We disagree. We review the trial court's findings regarding reasonable efforts for clear error. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). To be preserved for appeal, an issue should be "raised before, addressed by, or decided by" the trial court. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). Respondent never objected to the absence or requirement of services and did not present this issue in the trial court, so this issue is unpreserved. *Id*. "Generally speaking, in termination proceedings, we review unpreserved claims under the plain-error rule." *In re Beers/LeBeau-Beers*, 325 Mich App 653, 677; 926 NW2d 832 (2018). Under the plain-error rule, "the proponent must establish that a clear or obvious error occurred and that the error affected substantial rights." *Id*.

Before seeking termination of parental rights, the DHHS generally has an affirmative duty to make reasonable efforts to reunify a parent and child. *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c) and MCL 712A.19a(2). Except for situations that involve aggravating circumstances under MCL 712A.19a(2), whenever a child is removed from a parent's custody, petitioner is required to exert reasonable efforts to rectify the conditions that led to the child's removal by adopting a service plan that outlines the steps that both the DHHS and the parent will take to rectify the conditions that led to the court's involvement and thereby achieve reunification. *In re Sanborn*, 337 Mich App 252, 258-259; 976 NW2d 44 (2021). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009). Although the DHHS must "expend reasonable efforts to provide services to secure reunification" of the parent and the child, the parent has a "commensurate responsibility to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). In addition, the parent must demonstrate that he or she sufficiently benefited from the services. *Id*.

Here, the DHHS provided respondent with numerous services to reunify respondent with her child. Among the services provided were a psychological evaluation, random drug screens, mental-health counseling, parenting-education classes, and substance-abuse treatment. The record supports the trial court's finding that respondent failed to consistently participate in services, other than substance-abuse treatment, designed to address the barriers to reunification. Although she did complete parenting-education classes, respondent did not benefit from those classes. Indeed, her efforts were not adequate to remove the barriers to reunification. Therefore, respondent failed in her commensurate duty to participate in, and benefit from, the offered services. See *id*.

Respondent asserts that, regardless of whether the DHHS made reasonable reunification efforts, the trial court erred when, at the conclusion of a review hearing held in June 2022, the trial

-4-

court directed the DHHS to stop making reasonable efforts toward reunification. But this Court recognizes that the DHHS is only obligated "to make reasonable efforts to reunify a family *before* seeking termination of parental rights." *Hicks*, 500 Mich at 85 (emphasis added). As noted, reasonable efforts begin with the creation of a case-service plan to address the conditions that led to the removal of the child with the goal of reunification. *Id.* at 85-86. The DHHS made reasonable efforts to reunify the family before seeking termination of respondent's parental rights and created a case-service plan, but respondent failed to participate in the DHHS's reunification efforts. After respondent did not entirely comply with the case-service plan for more than eight months, the trial court changed the goal from reunification to termination. Accordingly, under these circumstances, the trial court did not err by directing the DHHS to no longer pursue the goal of reunification.

Respondent further insists that the trial court erred when it suspended her parenting time. Michigan law permits the trial court to suspend parenting time once a petition seeking to terminate parental rights has been filed, see MCR 3.977(D) and MCL 712A.19b(4), but no law or court rule specifically addresses the trial court's authority to suspend parenting time between adjudication and the filing of a petition seeking termination of parental rights. *In re Laster*, 303 Mich App 485, 488-489; 845 NW2d 540 (2013). Instead, this Court has ruled that, during the period following adjudication but before the filing of the petition seeking termination, the amount of parenting time allowed and the conditions for exercising parenting time are within the discretion of the trial court and should be determined based upon the child's best interests. *Id*. at 490. A finding of harm is not required to suspend parenting time during this period, but it is usually "implicit in the court's decision" to suspend a parent's parenting time. *Id*.

The adjudication hearing took place in July 2021. The trial court suspended respondent's parenting time in June 2022. The DHHS filed a petition to terminate respondent's parental rights in July 2022. Therefore, respondent's parenting time was suspended after adjudication but before the termination petition was filed. Up until that time, respondent was granted supervised parenting time. No court rule or statute defines the trial court's authority concerning parenting time between adjudication and the filing of a termination petition, much less requiring the trial court to make a finding of harm before suspending parenting time. Instead, the amount of parenting time permitted and the conditions for exercising that parenting time are within the discretion of the trial court and should be decided based upon the child's best interests. There is evidence in the record to support a finding that suspension of respondent's parenting time was in SKC's bests interests. Respondent was occasionally significantly late to parenting time, which meant that SKC was kept waiting the entire time. At visits, respondent was not responsive to the child's needs. She conducted visits by her preferences and her own routine, ignoring the child's wants and needs.

In sum, respondent raises no valid challenge to the reasonableness of the DHHS's efforts. The DHHS offered respondent numerous services aimed at removing the barriers to reunification, but respondent did not substantially participate in and benefit from the services offered throughout this case. Contrary to respondent's contention, the trial court did not clearly err by directing the DHHS to no longer provide efforts toward reunification after the goal was changed to termination. Additionally, the trial court did not abuse its discretion by suspending respondent's parenting time.

## C. STATUTORY GROUNDS FOR TERMINATION

Respondent next asserts that the trial court erred by finding that petitioner presented clear and convincing evidence that MCL 712A.19b(3)(c), (g), and (j) all furnished statutory grounds for termination of her parental rights. These provisions state as follows:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> > (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
> >
> > (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). This Court will reverse a trial court's decision, even if the evidence supports the trial court's findings, when this Court is "definitely and firmly convinced" the trial court made a mistake. *Id*. "In reviewing the circuit court's decision, we also must give due regard to the trial court's special opportunity to observe the witnesses." *In*

*re Dearmon*, 303 Mich App 684, 700; 847 NW2d 514 (2014) (quotation marks and citation omitted). If we determine that the trial court did not clearly err as to the existence of one ground for termination, we need not address any additional grounds. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). Here, we conclude that the trial court did not clearly err by relying upon MCL 712A.19b(3)(c)(*i*) as a basis for terminating respondent's parental rights. Pursuant to MCL 712A.19b(3)(c)(*i*), termination of parental rights is appropriate if 182 or more days have elapsed since the initial dispositional order, and the trial court finds, by clear and convincing evidence, that "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." In this case, more than 182 days had elapsed between the entry of the initial dispositional order in August 2021 and the date when the trial court ordered termination of parental rights in October 2022.

From the outset of this case, respondent had substance-abuse issues. The trial court found that respondent failed to establish a legal source of income or any suitable housing by the time of termination, rendering petitioner unable to accurately evaluate respondent's progress in alleviating these barriers. The trial court highlighted the significance of respondent's ongoing drug use. The trial court also noted respondent's failure to provide disclosures to petitioner. Therefore, based on respondent's drug use and failure to comply with the parenting plan, the trial court concluded that the conditions leading to adjudication continued to exist with no reasonable likelihood of change in the foreseeable future given the child's age and respondent's conduct throughout the case. In light of all of these circumstances, the trial court did not clearly err when it terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*). Because the trial court did not clearly err when it found that termination was warranted under MCL 712A.19b(3)(c)(*i*), we need not address whether the trial court clearly erred in finding that termination was warranted on other statutory grounds. See *HRC*, 286 Mich App at 461.

## D. BEST INTERESTS OF THE CHILD

Respondent next insists that the trial court clearly erred when it found, by a preponderance of the evidence, that termination was in the child's best interests. Again, we disagree. "We review for clear error the trial court's determination" that termination of parental rights is in a child's best interests. *White*, 303 Mich App at 713. After a trial court has found that petitioner has established a statutory ground for termination by clear and convincing evidence, the trial court must determine, by a preponderance of the evidence, whether termination is in the child's best interests. *Id*. A trial court must weigh several factors, including " 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.' " *Id*. "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case-service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714.

The trial court found that termination of respondent's parental rights was in the child's best interests for several reasons. First, this removal was the child's second removal, and respondent failed to comply with or benefit from the case-service plan. The child needed permanency and long-term placement, which respondent was unlikely to provide considering that she failed to gain the necessary skills that the case-service plan was designed to develop. Her failure to fully comply with the case-service plan, despite her knowledge that noncompliance could result in termination, demonstrated respondent's lack of investment, love, and affection for the child. Further, her lack

of meaningful participation is "evidence that the parent will not be able to provide a child proper care and custody." *Id*. at 710. The failure to benefit from the case-service plan alone was enough to indicate that terminating respondent's parental rights was in the child's best interests based on the risk of harm to the child if placed in respondent's care and custody.

Moreover, respondent never demonstrated that she could provide a stable home for SKC. Respondent briefly maintained appropriate housing, but during most of the case, she either did not have housing or had inappropriate housing. She also never gave verification of stable employment. The trial court found that this revealed that it was not in the child's best interests to be returned to respondent's care. The child's grandparents, rather than respondent, cared for the child's needs. The grandparents were excited to care for the child, and the child adjusted well in his grandparents' care. Finally, and contrary to respondent's contention, it was not clear whether respondent had a significant bond with the child. Respondent was occasionally significantly late to parenting time, which meant the child had to wait for periods of up to 90 minutes. When respondent eventually arrived for parenting time, respondent often disregarded the child's wants. She tended to execute parenting time in the way she wanted instead of adjusting to the child's mood and behavior. There was no evidence that the child preferred respondent over the grandparents or that the child strongly bonded with respondent.

In sum, the trial court did not abuse its discretion by failing to consider guardianship in lieu of termination of parental rights. Furthermore, the trial court did not err by directing the DHHS to no longer provide efforts toward reunification, nor did the court abuse its discretion by suspending respondent's parenting time. Similarly, the trial court did not clearly err by finding that a statutory ground for termination of respondent's parental rights existed or that termination was in the child's best interests.

Affirmed.

/s/ Douglas B. Shapiro
/s/ James Robert Redford
/s/ Christopher P. Yates