*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* E. E. KIRBY, Minor.

UNPUBLISHED
June 29, 2023

No. 363369
Wayne Circuit Court
Family Division
LC No. 2009-486603-NA

Before: HOOD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Respondent-mother appeals of right the order terminating her parental rights to her minor child, EK, under MCL 712A.19b(3)(i) (parental rights to 1 or more siblings of the child have been terminated because of serious and chronic neglect and the parent has failed to rectify the conditions that led to the prior termination of parental rights). We affirm.

## I. FACTUAL BACKGROUND

Respondent is the mother of ten children. She has had extensive contact with Children's Protective Services (CPS) since 2006 for issues relating to homelessness, improper supervision, sexual abuse, drug abuse, threatened harm, and physical neglect. Because of respondent's issues with homelessness and neglect of her children, respondent's parental rights to several of her other children were terminated between 2010 and 2021. On November 17, 2021, respondent gave birth to her tenth child, EK, who was referred to CPS for alleged neglect because respondent was again homeless and sleeping in her car or staying with friends and family. Kenya Brown—the assigned CPS specialist—referred respondent to local shelters, but respondent was unable to obtain suitable housing.

In January 2022, a petition was filed requesting that the trial court take jurisdiction over EK under MCL 712A.2(b)(1) (parent, when able to do so, neglects to provide proper or necessary care for the child) and (2) (the home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of the parent is unfit for the child) and terminate respondent's parental rights under MCL 712A.19(b)(3)(g) (parent, although financially able to do so, fails to provide proper care or custody), (i), and (j) (reasonable likelihood child will be harmed). At the preliminary hearing, Brown stated that it was contrary to EK's welfare to remain with respondent because she was homeless and her parental rights to several of her other children had previously

-1-

been terminated based on her chronic issues with homelessness and mental health. During cross-examination, Brown reported that respondent had accessed prenatal care while pregnant with EK, that EK was born healthy, that respondent had followed through with housing referrals, and that respondent was generally cooperative. Brown also averred that respondent's cousin, LaShawnda Marshall, was already EK's caregiver and was willing to provide long-term care for EK.

The trial court found that there were grounds to authorize the petition and remove EK from respondent's care because of respondent's previous terminations and her failure to provide EK with safe and suitable housing. The trial court also found reasonable efforts were made to prevent removal, issued a concurrent plan of adoption and reunification with respondent, and also granted respondent supervised visits with EK. Further, the trial court stated that Brown should continue to offer prevention services and housing referrals to respondent.

In April 2022, the adjudication took place. Brown testified that, although respondent had been complying with therapy services for months, had obtained prenatal care for EK, had followed through with housing referrals, and was generally cooperative, her history with previous treatment plans to address her housing, mental-health, and substance-abuse issues had all been unsuccessful. Ultimately, Brown stated that reunification should not be an option because respondent's history of homelessness would not be rectified in a reasonable amount of time. Jennifer Kincaid, a foster-care worker from Family and Community Services, testified that she developed an initial service plan for EK and respondent to address respondent's issues with homelessness and mental-health issues.

In closing arguments, petitioner contended that the trial court should take jurisdiction over EK under MCL 712A.2b(1) or (2) because EK lacked proper care and supervision. Petitioner also requested that the trial court find statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(g), (i), and (j). Respondent rejoined that although grounds for jurisdiction were arguably present, no basis for termination existed because respondent had cooperated with services and worked to rectify the issues that caused EK to be removed from her care. Because respondent demonstrated the capacity and willingness to successfully complete a treatment plan, respondent argued that termination would be inappropriate and she should be given the time and opportunity to obtain suitable housing and to reunite with EK.

The trial court found, by a preponderance of the evidence, it had jurisdiction over EK under MCL 712A.2b(1) and (2) because of respondent's "lack of housing, failure to provide proper care and custody, prior terminations of parental rights to other children and her other children currently not in her care as well . . . ." Also, the trial court found, by clear and convincing evidence, statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(i). After the hearing, the trial court entered an order confirming its findings that statutory grounds for jurisdiction existed under MCL 712A.2(b)(1) and (2) and that a statutory ground for termination existed under MCL 712A.19b(3)(i) because of respondent's chronic homelessness and prior terminations. The trial court declared EK petitioner's ward and ordered EK to remain in Marshall's care.

In August 2022, Robert Geiger, Ph.D., evaluated respondent and submitted his findings to the trial court. Dr. Geiger believed that termination was in EK's best interests because respondent failed to establish closeness with EK during sporadic visits and because of respondent's continued failure to maintain stable housing and employment. Dr. Geiger further noted that respondent had

ongoing mental-health issues and had been inconsistent with treatment. Further, Dr. Geiger found Marshall could provide a safe, stable home and had expressed a willingness to continue caring for EK.

At the best-interests hearing on August 26, 2022, Marshall testified that since she had been caring for EK, respondent had regularly visited with EK by Zoom, but failed to consistently visit with EK in person. Marshall believed EK was better bonded to her than with respondent and she expressed a willingness to adopt EK. During closing arguments, petitioner argued that termination was in EK's best interests because EK had been in Marshall's care nearly since birth and Marshall had expressed a willingness to adopt EK. Further, petitioner contended that the conditions that led to respondent's prior terminations still existed. In response, respondent claimed that termination was not in EK's best interests. Respondent asserted that she was taking active steps to rectify her housing, economic, and mental-health issues and that she should be granted more time to comply. Respondent also noted that EK's placement with a relative weighed against termination. Petitioner rejoined, insisting that although EK's placement with a relative was a factor militating against the termination of respondent's parental rights, it was outweighed by other evidence.

The trial court concluded, by a preponderance of the evidence, that termination was in EK's best interests under MCL 712A.19b(5) because the same conditions that resulted in the termination of respondent's parental rights to her other children still existed and respondent had not complied with or benefited adequately from prior treatment-plan services. Moreover, respondent's visitation by Zoom with EK did not enable her to adequately bond with EK and the risk of harm to EK was reasonably foreseeable based on respondent's history of noncompliance. The trial court concluded that EK's placement with a relative, although a mitigating factor, was insufficient to overcome the other evidence presented. The trial court ordered that respondent's parental rights be terminated. This appeal followed.

## II. LEGAL ANALYSIS

Respondent contends that the trial court erred in several respects. First, respondent asserts that the trial court erred when it took permanent custody of EK.[1] Next, respondent argues that the trial court erred in finding, by clear and convincing evidence, that statutory grounds for termination existed. Finally, respondent insists that the trial court erred when it found that termination was in EK's best interests. We shall address each of these issues in turn.

## A. REASONABLE EFFORTS

Respondent asserts that the trial court erred when it ordered petitioner to take permanent custody of EK even though petitioner had not offered respondent a treatment plan to address the conditions that caused EK's removal. We review the trial court's findings about reasonable efforts for clear error. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). To be preserved for appeal, an issue should be "raised before, addressed by, or decided by" the trial court. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). Respondent

---

[1] Respondent uses the phrase "permanent custody" in conjunction with her lack-of-services claim. We have chosen to interpret that to be equivalent to a reasonable-efforts argument.

never objected to the absence or requirement of services and did not present that issue in the trial court, so the issue is unpreserved. *Id.* "Generally speaking, in termination proceedings, we review unpreserved claims under the plain-error rule." *In re Beers/LeBeau-Beers*, 325 Mich App 653, 677; 926 NW2d 832 (2018). Under the plain-error rule, "the proponent must establish that a clear or obvious error occurred and that the error affected substantial rights." *Id.*

Before requesting termination of parental rights, CPS generally has an affirmative duty to make reasonable efforts to reunify a parent and child. *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c) and MCL 712A.19a(2). Except for situations that involve aggravating circumstances under MCL 712A.19a(2), whenever a child is removed from a parent's custody, petitioner is required to exert reasonable efforts to rectify the conditions that led to the child's removal by developing a service plan that outlines the steps that both CPS and the parent should take to rectify the conditions that led to the court's involvement, and thereby achieve reunification. *In re Sanborn*, 337 Mich App 252, 258-259; 976 NW2d 44 (2021). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009).

According to MCL 712A.18f(1)(b), if petitioner advises the trial court against placing the child in a parent's custody, petitioner must report in writing the efforts made to prevent the child's removal or the efforts made to rectify the conditions that caused the child's removal. Further, if services were not provided to the child and the parent, the reasons why services were not provided must also be listed. MCL 712A.18f(1)(b). Here, the petition identifies the efforts made to prevent removal and further explains that respondent "had two foster care treatment plans and she has not benefited from previous services offered to her. Based upon [respondent's] previous CPS history, prior terminations, and her failure to obtain/maintain adequate housing, [EK] is at risk of harm in [respondent's] care." In addition, reasonable reunification efforts are not required in cases where "[t]he parent has had rights to the child's siblings involuntarily terminated." MCL 712A.19a(2)(c). Consequently, petitioner was not required to make reasonable efforts towards reunification, so respondent's claim lacks merit.

## B. STATUTORY GROUNDS FOR TERMINATION

Respondent next argues that the trial court erred by finding there was clear and convincing evidence to terminate respondent's parental rights to EK because the trial court focused exclusively on respondent's history and ignored her present-day efforts to provide for EK. We disagree. "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). We will reverse a trial court's decision, even if the evidence supports the trial court's findings, when we are "definitely and firmly convinced" the trial court made a mistake. *Id.*

The trial court found, by clear and convincing evidence, that termination of respondent's parental rights was warranted under MCL 712A.19b(3)(g), (i), and (j). These provisions state as follows:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). If we determine that the trial court did not clearly err as to the existence of one ground for termination, we need not address any additional grounds. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). Here, we conclude that the trial court did not clearly err by relying on MCL 712A.19b(3)(i) to terminate respondent's parental rights.

Respondent had her parental rights to her other children terminated because of issues with chronic homelessness, mental health, and neglect. Additionally, respondent admitted she was still homeless and was either sleeping in her car or staying with friends and family at the time that EK was born. Although respondent tried to follow through on housing referrals that Brown provided, respondent remained unable to obtain housing. Respondent complied with therapy services in the months leading up to termination, obtained prenatal care for EK, and was generally cooperative, but respondent had a history of trying to complete treatment plans but failing to follow through with services. Further, during the adjudication, Brown recommended that reunification should not be an option because she believed respondent's history of homelessness would not be rectified in a reasonable amount of time.

In light of these circumstances, the trial court did not clearly err when it found a statutory basis to terminate respondent's parental rights under MCL 712A.19b(3)(i). Because the trial court did not clearly err when it found that termination was warranted under MCL 712A.19b(3)(i), we need not address whether the trial court clearly erred in finding that termination was warranted on other statutory grounds. See *In re HRC*, 286 Mich App at 461.

## C. BEST-INTERESTS ANALYSIS

Respondent next argues that the trial court erred because it did not consider any of the best-interests factors when terminating respondent's parental rights, and instead improperly relied on

respondent's history of homelessness and the prior termination of her parental rights to her other children. We disagree.

Even though a statutory ground supported the termination of respondent's parental rights, the trial court had to determine whether termination of respondent's parental rights was in the best interests of the child. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). We review for clear error the trial court's determination regarding the child's best interests. *In re White*, 303 Mich App at 713.

In assessing the best interests of a child, the trial court may consider " 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability and finality, and the advantages of a foster home over the parent's home.' " *Id*. (citation omitted). In addition, the trial court may weigh "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. Finally, because a child's placement with a relative militates against termination of parental rights, MCL 712A.19a(8)(a), "the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *In re Olive/Metts*, 297 Mich App at 43. "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with [their] relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id*.

The record reveals that respondent failed to comply with past treatment plans and current housing referrals. The trial court noted that Marshall would be able to provide EK with stability, safety, nurturing, and permanency. Although acknowledging that respondent had a bond with EK, the trial court pointed out that respondent's visits by Zoom prevented her from establishing a close bond with EK and that Marshall had a stronger bond with EK. The trial court also found it unlikely that respondent could rectify her ongoing issues with homelessness in a reasonable amount of time. Because the evidence strongly supports the trial court's finding that termination was in EK's best interests, the trial court did not clearly err in terminating respondent's parental rights.

Affirmed.

/s/ Noah P. Hood
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates